IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 14-_____ |
| v. | : | DATE FILED: |
| DEVOS LTD. D/B/A GUARANTEED RETURNS | : | VIOLATIONS: |
| DEAN VOLKES | : | 18 U.S.C. § 1343 (wire fraud – 18 counts) |
| DONNA FALLON | : | 18 U.S.C. § 1341 (mail fraud – 14 counts) |
| RONALD CARLINO | : | 18 U.S.C. § 641 (theft of government property – 1 count) |
| | : | 18 U.S. C. § 371 (conspiracy to obstruct justice – 1 count) |
| | : | 18 U.S.C. § 1512(c)(1) (obstruction of justice – 3 counts) |
| | : | 18 U.S.C. § 1519 (obstruction of justice – 3 counts) |
| | : | 18 U.S.C. § 1001 (false statements – 3 counts) |
| | | 18 U.S.C. § 1956(h) (conspiracy to launder money – 1 count) |
| | | 18 U.S.C. § 2 (aiding and abetting) |
| | | Notice of Forfeiture |

## I N D I C T M E N T

### COUNTS ONE THROUGH EIGHTEEN
#### (Wire Fraud)

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

#### The Defendants

1.      Defendant DEVOS LTD., D/B/A GUARANTEED RETURNS ("GUARANTEED

RETURNS") was a corporation based in Holbrook, New York.   Defendant GUARANTEED

RETURNS was in the business of managing the returns of pharmaceutical products for healthcare

providers, in exchange for a fee based on a percentage of the return value.

2.      Defendant DEAN VOLKES was the sole owner, President, and Chief Executive Officer of defendant GUARANTEED RETURNS.

3.      Defendant DONNA FALLON was the Executive Vice President and Chief Financial Officer of defendant GUARANTEED RETURNS. Defendant FALLON was also the sister of defendant VOLKES.

4.      Defendant RONALD CARLINO was an employee of defendant GUARANTEED RETURNS.

## Background

5.      There are more than a thousand pharmaceutical manufacturers authorized to provide pharmaceutical products for sale in the United States.   Healthcare providers that purchase pharmaceutical products, such as hospitals, pharmacies, and long-term care facilities, acquire and maintain drugs from hundreds of manufacturers.   Rather than having to maintain accounts directly with numerous manufacturers, most healthcare providers purchase their pharmaceutical products through wholesale distributors.   Healthcare providers purchase drugs from their wholesalers and maintain commercial accounts at their wholesalers.   The three largest pharmaceutical wholesalers in the United States, handling more than 90 percent of all wholesale sales, are AmerisourceBergen Corporation ("Amerisource Bergen"), Cardinal Health Inc. ("Cardinal Health"), and McKesson Corporation ("McKesson").

6.      When a healthcare provider purchases an excess quantity of a drug, it can often be returned for a refund.   Each pharmaceutical manufacturer has a return policy specifying the circumstances under which it will provide a refund for its pharmaceutical products.   Full refunds

are generally provided for recalled or damaged products as well as for products that have recently expired.   Refunds are not typically provided for partially used products.   Likewise, under many manufacturers' policies, refunds are generally not available for products that have been expired for a lengthy period of time.   The specific refund policies vary by manufacturer and by drug.

7.     In order to obtain a refund from a manufacturer, a healthcare provider client will typically be required to return the drug for which it is seeking a refund to that drug's manufacturer or to certify that the drug was destroyed in accordance with governmental regulations.   If the return is within the manufacturer's refund policy, the manufacturer either sends money to the client or issues a credit to that client's account at a wholesaler.

8.     Given the number of drugs in their inventories, given the number of different manufacturers with which they may be required to deal, and given the variations in return policies both among manufacturers and among different drugs from the same manufacturer, many healthcare provider clients arrange with a pharmaceutical returns company, also known as a "reverse distributor," to handle their drug returns on their behalf.

9.     A pharmaceutical returns company manages the returns process for its healthcare provider clients.   Instead of separately sending drug products back to many different drug manufacturers, the healthcare provider can send all of the drug products that it wishes to return to a single location – the returns company.   The returns company sorts the products, determines which drug products are returnable under the manufacturers' policies, and sends those products to the appropriate manufacturer, requesting credit on behalf of its healthcare provider client.   As an additional service, the pharmaceutical returns company will destroy any non-returnable product. The returns company tracks incoming and outgoing drugs and prepares an itemized list of their

acquisition and disposition.

10.     For the sake of efficiency, the pharmaceutical returns company combines the drugs that it seeks to return into batches that are to be returned to a particular manufacturer.   Thus, a batch can consist of a wide variety of drugs that the pharmaceutical returns company is returning to a single manufacturer on behalf of a large number of different healthcare provider clients.

11.     Pharmaceutical returns companies are not themselves purchasers or distributors of drugs.   Rather, they act on behalf of their healthcare provider clients to return drugs that were originally purchased by those clients.   As a consequence, those drugs, and the funds and credits that pharmaceutical returns companies obtain from returning those drugs, are the property of the healthcare provider clients, and those funds are to be remitted to the clients to whom they belong. The pharmaceutical returns companies perform a service for their healthcare provider clients, and are generally compensated for that service on a commission basis, based on a percentage of the value of the return.   The amount of the commission or percentage can vary from client to client and from time to time.

12.     Among the pharmaceutical products that healthcare providers commonly return are "indates" or "indated drug products."   Indates are drugs that the healthcare provider client no longer wants, which are not currently returnable to the manufacturer for refund, but which will become refundable if returned to the manufacturer at a later date.   Typically, indates arise because manufacturers' policies allow cash or credit for the return of recently expired drugs, but do not provide cash or credit for the return of saleable unexpired drug products.   These restrictive return policies arise because manufacturers wish to encourage healthcare providers to purchase drugs in quantity without fear of being stuck with excess product but, at the same time, wish to discourage

4

those same healthcare providers from changing from their product to a competitor's product.   As a result, healthcare providers can find themselves with pharmaceuticals that they no longer wish to stock or keep in their inventories, but which are not yet returnable because they have not yet expired.

13.     Pharmaceutical returns companies can be of particular value to healthcare provider clients with indates.   Not only can the pharmaceutical return company hold indated drug products in its own warehouses, relieving its clients of the expense of having those drugs age in the clients' more expensive facilities, but the returns company can also efficiently track the indated drug products by their expiration dates so that they are returned promptly after they first become returnable.

14.     The Defense Supply Center Philadelphia, also known as DLA Troop Support ("DSCP") was a component of the Defense Logistics Agency, U.S. Department of Defense ("Department of Defense"), an agency of the United States, located in Philadelphia, in the Eastern District of Pennsylvania.   Among other things, DSCP supplied armed forces personnel with essential supplies, including pharmaceutical products, through military health facilities throughout the world.

### The Scheme to Defraud

15.     From at least 1999, the exact date being unknown, until at least on or about April 5, 2011, defendants

### DEVOS LTD. D/B/A GUARANTEED RETURNS and
### DEAN VOLKES

devised and intended to devise a scheme to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

5

## Manner and Means

It was part of the scheme that:

16.     Defendant GUARANTEED RETURNS was a "reverse distributor" of pharmaceutical products for clients located throughout the United States, including the Eastern District of Pennsylvania.   Manufacturers of pharmaceutical products would generally allow their purchasers to return damaged, recalled, or expired unused products.   At the direction of defendant DEAN VOLKES, defendant GUARANTEED RETURNS solicited healthcare providers that maintained a pharmaceutical inventory, such as hospitals, clinics, surgery centers, long term care facilities, and pharmacies ("clients" or "healthcare provider clients"), and offered to collect the clients' expired, recalled, damaged, or overstocked pharmaceutical products, and return those drug products to the original manufacturers for a percentage of the return value.

17.     At the direction of defendant DEAN VOLKES, defendant GUARANTEED RETURNS touted itself as an expert in the field of pharmaceutical returns and boasted of its relationships with drug manufacturers that purportedly enabled it to obtain maximum refunds for its clients.   At the direction of defendant DEAN VOLKES, defendant GUARANTEED RETURNS' salespersons told clients and potential clients that defendant GUARANTEED RETURNS would store their indates and, at the appropriate time, return those indates for credit or cash for the clients.

18.     Defendant GUARANTEED RETURNS trained its sales representatives to promote GUARANTEED RETURNS to clients by asserting that defendant GUARANTEED RETURNS would maintain indated drug products in its warehouse on the client's behalf, and that the indates would be credited to the client when the indated products expired and became returnable for

6

refund.

19.     At the direction of defendant DEAN VOLKES, defendant GUARANTEED RETURNS represented to the Department of Defense and DSCP that GUARANTEED RETURNS would (a) hold the government's indated drug products; (b) return them on behalf of the United States when doing so became consistent with the manufacturers' return policies, and (c) remit all funds obtained from manufacturers in connection with the return of indated drug products to the United States, less defendant GUARANTEED RETURNS's contractual fee.

20.     At the direction of defendant DEAN VOLKES, defendant GUARANTEED RETURNS told its healthcare provider clients that it would submit "returnable product" to the manufacturer for an "all inclusive" percentage fee, and that "non-returnable goods will be destroyed in accordance with all applicable governmental rules and regulations at a fully licensed and insured facility."

21.     In a 2008 internal sales training document, defendant GUARANTEED RETURNS provided the following model "Question and Answer" for use by sales representatives dealing with the top client dissatisfaction issues:

Q:     Where are my indates?

A:     All indated items will appear on your non-returnable report.   GRX ages and stores all indated merchandise.   These items will be added to your returnable report as they become eligible for credit. . . .

22.     On or about January 30, 2001, DSCP awarded contract number SP0200-01-D-1501 (the "DoD-1501 Contract") to defendant GUARANTEED RETURNS for its services in connection with the return of pharmaceutical products, including indated drug products, from various Department of Defense facilities to the pharmaceutical manufacturers from whom those

7

products had been purchased.   Through this contract, DSCP also handled the returns of

pharmaceutical products, including indated drug products, for certain non-Department of Defense

facilities, such as the District of Columbia Department of Health, hospitals operated by the

Veterans Administration and Federal Bureau of Prisons.   Under the DoD-1501 Contract,

defendant GUARANTEED RETURNS agreed to provide refunds to DSCP in the full amount to

which DSCP was entitled, less a fee of approximately 5% that was to be retained by

GUARANTEED RETURNS in payment for GUARANTEED RETURNS's services as a

pharmaceutical return company.

     23.     On or about October 1, 2007, DSCP awarded defendant GUARANTEED

RETURNS contract SPM200-07-D-5201 (the "DoD-5201 Contract") as a follow-on contract to

the DoD-1501 Contract.   In its technical proposals that successfully persuaded the Department of

Defense to award the DoD-5201 Contract to defendant GUARANTEED RETURNS,

GUARANTEED RETURNS represented that it was currently processing, and would continue to

process, indated drug products for credit to the government:

> GUARANTEED RETURNS® will inventory, warehouse and age all in-dated
> products free of charge. When the products have aged to maturity and are
> eligible for credit GUARANTEED RETURNS® will process all items for credit
> and contracted service fees will apply. Our streamline [sic] process helps
> facilities maximize both: their credit earnings and facility overhead efficiency.

     24.     Notwithstanding its obligation to act on its clients' behalf, and to remit to its clients

all funds obtained from drug manufacturers in connection with the return of those clients'

pharmaceutical products, less defendant GUARANTEED RETURNS's contractual fee, defendant

DEAN VOLKES, acting through defendant GUARANTEED RETURNS, and assisted by

defendant DONNA FALLON, stole a significant amount of the clients' indated drug products,

8

returned them to the manufacturers as if those drug products belonged to defendant GUARANTEED RETURNS, and kept the money.

25.    Defendant GUARANTEED RETURNS maintained a computerized inventory control system, known as the FilePro system, to track each pharmaceutical product of each healthcare provider client of GUARANTEED RETURNS, from the date that the product first arrived at GUARANTEED RETURNS, to the date that GUARANTEED RETURNS returned the product to the pharmaceutical manufacturer for credit.

26.    In the FilePro system, each healthcare provider client was assigned its own unique account code.

27.    The FilePro system showed when the drug product was initially received by defendant GUARANTEED RETURNS.   For indated products, the FilePro system further showed when the product would be returnable under the manufacturer's return policy.

28.    Once the indated drug products of clients of defendant GUARANTEED RETURNS became returnable under the manufacturers' policies, the defendants employed several different methods to steal their clients' indated drug products, including the Unmanaged Client Strategem, the G-13 Strategem, and the 3-Year Cutoff Strategem.

### The Unmanaged Client Strategem

29.    Beginning in or about February 2007, defendants DEAN VOLKES and GUARANTEED RETURNS modified the FilePro system to change how it processed indates. Defendant DEAN VOLKES directed Person #1 to program the FilePro System to distinguish between two categories of client healthcare providers, "managed" and "unmanaged."

30.    Defendant DEAN VOLKES divided clients of defendant GUARANTEED

RETURNS into two categories:  "managed" and "unmanaged."   "Managed" clients were clients

who were believed to pay careful attention to the disposition of their returns, while "unmanaged"

clients were those believed unlikely to notice if they did not receive credit for their indates.

Defendant VOLKES directed Person #1 to program the FilePro System so that all indates for

"unmanaged" clients would be diverted from the accounts of the "unmanaged" clients and into

accounts set up for defendant GUARANTEED RETURNS, known as "GRX Stores."

31.     The FilePro system kept track of when an indated drug product had just become, or

was imminently about to become, eligible for refund under the manufacturer's return policy.

When the product became eligible for refund under the manufacturer's policy, one of two things

happened.   If the drug belonged to a "managed" client, the FilePro system left the drug assigned

to the client; if the drug belonged to an "unmanaged" client, it was stolen, by assigning it to one of

the so-called "GRX Stores."

32.     Defendant DEAN VOLKES instructed Person #1 to modify the FilePro

computerized inventory control system so that a "managed list" would be consulted for each newly

expired indate product.   The "managed list" determined whether the refund obtained for that drug

would be paid to the client or would instead be stolen.

33.     Defendant DEAN VOLKES directed Person #1 to password protect the "managed

list" so that only defendant VOLKES could control which clients were included on the "managed

list."

34.     For healthcare provider clients that did not appear on the "managed list," any

indated drug products that expired and became returnable were misappropriated as the property of

defendant GUARANTEED RETURNS in a so-called "GRX Store."

### The G-13 Strategem

35.     In or about October 2010, defendant DEAN VOLKES directed personnel in defendant GUARANTEED RETURNS's information technology department to modify the FilePro system further, to divert additional products from defendant GUARANTEED RETURNS's healthcare provider clients to one of the so-called GRX Stores.

36.     Under the G-13 Program devised by defendant DEAN VOLKES, every thirteenth expiring indate product of a "managed" client would be reviewed to determine whether that product could successfully be diverted to a GRX Store.   Products that were worth more than $3,000, and therefore of sufficient value that they might attract the attention of the managed client, were not stolen.   Likewise, drugs for which the manufacturer would only pay the refund directly to the healthcare provider client were not stolen.   However, unless excluded by one of these rules, every thirteenth product of every "managed" customer was re-classified as an "unmanaged" product.   As a consequence, that product was diverted to a so-called GRX Store, and thereby stolen.

37.     On or about November 3, 2010, at the direction of defendant DEAN VOLKES, the G-13 Program was implemented.   From November 3, 2010, to approximately April 5, 2011, defendant GUARANTEED RETURNS stole at least 6,700 products, valued at approximately $631,612, by diverting them from the accounts of "managed" clients to one of the so-called GRX Stores under the G-13 Program.

38.     On or about April 10, 2011, after agents from the DoD Defense Criminal Investigative Service ("DCIS") and the Federal Bureau of Investigation ("FBI") had searched the offices of defendant GUARANTEED RETURNS pursuant to a court-authorized search

warrant, and copied the computers of defendant GUARANTEED RETURNS, defendant DEAN

VOLKES directed Person #1 to disable the G-13 Program.

### The 3-Year Cutoff Stratagem

39.     In or about January 2011, defendant GUARANTEED RETURNS implemented an

additional stratagem to divert indated drug products from its healthcare provider clients to the

so-called GRX Stores.   Defendant DEAN VOLKES directed Person #1 to modify the computer

code of the FilePro System in order to examine indated drug products that had been received from

"managed" healthcare provider clients at the time they were returned to the appropriate

manufacturers.   Under the new computer program, those products from "managed" clients that

had been received more than three years earlier were reclassified from "managed" to

"unmanaged."   As a result, this additional property of defendant GUARANTEED RETURNS's

healthcare provider clients was stolen by diverting it from the healthcare provider clients's

individual accounts into one of the so-called GRX Stores.

### Disposition of the Stolen Drugs

40.     Healthcare provider clients entrusted their indated products to defendant

GUARANTEED RETURNS, based on defendant GUARANTEED RETURNS's agreement to

return them on behalf of the clients when doing so became consistent with the manufacturers'

return policies, and remit all funds obtained from manufacturers in connection with the return of

indated drug products to the clients, less defendant GUARANTEED RETURNS's contractual fee.

For each of the defendants' diversion stratagems, detailed above, indated drug products were

stolen by diverting them from the accounts of the healthcare provider clients, into one of the

so-called GRX Stores.   Then, after payment was received by defendant GUARANTEED

RETURNS from the manufacturers, the funds were distributed by defendant DONNA FALLON to defendant DEAN VOLKES.

41.     At the direction of defendant DEAN VOLKES, defendant GUARANTEED RETURNS implemented a system under which healthcare provider clients were provided with two different manifests detailing the products received from them by defendant GUARANTEED RETURNS: "returnable" manifests and "non-returnable" manifests.

42.     In furtherance of the defendants' scheme to steal the property of the healthcare provider clients of defendant GUARANTEED RETURNS, the defendants listed the indated drug products on the client's "non-returnable" manifest, but failed to state on that manifest that the products were indates that would be eligible for refund once they expired.   Instead, defendant GUARANTEED RETURNS listed the products as "not eligible for credit," with no further explanation.   When clients inquired about their indates, personnel at defendant GUARANTEED RETURNS told the clients that indates were being maintained and would be returned to the manufacturers on the clients' behalf.

43.     For "unmanaged" clients, and for products diverted from "managed" clients, these assurances were knowingly false.

44.     Eventually, defendant GUARANTEED RETURNS developed an "indate" report for those of its clients that had been put on the "managed" list.   Nevertheless, defendant GUARANTEED RETURNS continued to market to all of its clients that their indates were being held on their behalf.

45.     Defendant GUARANTEED RETURNS focused its diversions on the indated drug products of manufacturers that issued refunds through pharmaceutical wholesalers.   For these

13

manufacturers, defendant GUARANTEED RETURNS would "batch" the return products from numerous clients and send them to the manufacturers.   The manufacturers would then issue payment to the wholesaler, which in turn, entrusted the payment to defendant GUARANTEED RETURNS, for the purpose of defendant GUARANTEED RETURNS allocating the refund among its healthcare provider clients.   Instead of doing so, defendant GUARANTEED RETURNS retained the funds for the indated products that it had stolen by diverting them to one of the so-called GRX Stores.

46.     Defendant GUARANTEED RETURNS sometimes listed for the manufacturer the clients who were returning each product for which a refund was requested.   Although products from the so-called GRX Stores were included in these transmissions, defendant GUARANTEED RETURNS did not state that these products were being returned by defendant GUARANTEED RETURNS on its own account.   Instead, the products from the so-called GRX Stores were attributed to the original purchaser.

47.     Defendant DEAN VOLKES used a "check program" with two wholesalers, Amerisource Bergen and Cardinal Health.   Under this program, defendant GUARANTEED RETURNS received a check or wire transfer for the value of the drug products that it returned through that wholesaler, less a one or two percent convenience fee paid to the wholesaler. Defendant DONNA FALLON then disbursed some of the refund to the clients of defendant GUARANTEED RETURNS, but she did not disburse the value of the indates that had been stolen by diverting them to one of the so-called GRX Stores.   Instead, she retained those funds temporarily in the GUARANTEED RETURNS operating account, and then distributed the funds to defendant VOLKES.

48.     Many of defendant GUARANTEED RETURNS's healthcare provider clients used a wholesaler, McKesson, which did not participate in a "check" program with defendant GUARANTEED RETURNS.   McKesson would only provide credits to the clients' accounts, and would not issue checks to GUARANTEED RETURNS for the funds due to the healthcare provider clients for the returned product.   In order to divert indated drug products from clients who had purchased their drug products through McKesson, defendant DEAN VOLKES directed that the indated drug products for these clients be returned through Amerisource Bergen instead.

### The Wires

49.     In order to implement the scheme, defendant GUARANTEED RETURNS submitted wires to manufacturers, requesting that funds be paid to defendant GUARANTEED RETURNS on behalf of its clients, which defendant GUARANTEED RETURNS would in turn distribute to its clients.   Instead, to a significant extent, defendant GUARANTEED RETURNS retained the funds for its own account.

50.     From in or about 1999 to on or about March 31, 2011, defendant GUARANTEED RETURNS submitted requests to drug manufacturers for returns in the amount of approximately $116,193,369 that represented returns of drug products that defendant GUARANTEED RETURNS had stolen by using the FilePro inventory system to divert the products from the clients' accounts into one of the so-called GRX Stores.

51.     On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS and**
**DEAN VOLKES**

for the purpose of executing the scheme described above, and attempting to do so, and aiding and

15

abetting its execution, caused to be transmitted by means of wire communication in interstate

commerce the signals and sounds described below, each transmission constituting a separate

count:

| Count | Date | Description |
|-------|------|-------------|
| 1 | 12/31/09 | Electronic Data Interchange ("EDI") transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual Pharmaceutical Company, Inc. ("Mutual"), in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 2 | 1/5/2010 | Facsimile transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Shire, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 3 | 2/16/10 | EDI transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 4 | 2/17/2010 | Facsimile transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 5 | 2/22/2010 | Facsimile transmission from Mutual, in the Eastern District of Pennsylvania, to defendant GUARANTEED RETURNS, in Holbrook, New York, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 6 | 3/3/2010 | Facsimile transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Shire, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 7 | 4/5/2010 | EDI transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |

| Count | Date | Description |
|---|---|---|
| 8 | 4/8/2010 | Email from defendant GUARANTEED RETURNS, in Holbrook, New York, to Shire, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 9 | 4/9/2010 | Facsimile transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 10 | 6/4/2010 | Email from defendant GUARANTEED RETURNS, in Holbrook, New York, to Shire, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 11 | 6/21/2010 | EDI transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 12 | 7/16/2010 | EDI transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 13 | 8/17/2010 | EDI transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 14 | 8/23/2010 | Email transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Shire, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 15 | 10/7/2010 | EDI transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |

| Count | Date | Description |
|-------|------|-------------|
| 16 | 1/7/2011 | EDI transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual Pharmaceuticals, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 17 | 1/26/2011 | Email from defendant GUARANTEED RETURNS, in Holbrook, New York, to Shire, in the Eastern District of Pennsylvania, related to refund for drug products that had been stolen by assigning them to a so-called GRX Store. |
| 18 | 2/1/2011 | EDI transmission from defendant GUARANTEED RETURNS, in Holbrook, New York, to Mutual, in the Eastern District of Pennsylvania, requesting refund for drug products that had been stolen by assigning them to a so-called GRX Store. |

All in violation of Title 18, United States Code, Section 1343.

18

## COUNTS NINETEEN THROUGH THIRTY-TWO
### (Mail Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

     1.      Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

     2.      From at least 1999, the exact date being unknown, until at least on or about   April 5, 2011, defendants

### DEVOS LTD. D/B/A GUARANTEED RETURNS and
### DEAN VOLKES

knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

     3.      On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

### DEVOS LTD. D/B/A GUARANTEED RETURNS and
### DEAN VOLKES

for the purpose of executing the scheme described above, and attempting to do so, and aiding and abetting its execution, knowingly caused to be delivered by United States mail according to the directions thereon, the items described below:

| Count | Date | Description |
|---|---|---|
| 19 | 12/16/2009 | Mailing from Shire, in the Eastern District of Pennsylvania, to Amerisource Bergen, in New Jersey, listing products to be refunded based on defendant GUARANTEED RETURNS' requests. |
| 20 | 1/13/2010 | Mailing from Mutual, in the Eastern District of Pennsylvania, to Cardinal, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 21 | 3/4/2010 | Mailing from Shire, in the Eastern District of Pennsylvania, to Cardinal Health, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |

| Count | Date | Description |
|-------|------|-------------|
| 22 | 3/4/2010 | Mailing from Shire, in the Eastern District of Pennsylvania, to Cardinal Health, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 23 | 4/13/2010 | Mailing from Mutual, in the Eastern District of Pennsylvania, to Amerisource Bergen, in New Jersey, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 24 | 4/22/2010 | Mailing from Mutual, in the Eastern District of Pennsylvania, to Cardinal, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 25 | 4/27/2010 | Mailing from Shire, in the Eastern District of Pennsylvania, to Cardinal Health, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 26 | 6/8/2010 | Mailing from Shire, in the Eastern District of Pennsylvania, to Cardinal Health, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 27 | 6/29/2010 | Mailing from Mutual, in the Eastern District of Pennsylvania, to Cardinal, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 28 | 7/22/10 | Mailing from Mutual Pharmaceutical Company, Inc., in the Eastern District of Pennsylvania, to Amerisource Bergen, in New Jersey, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 29 | 8/19/2010 | Mailing from Mutual, in the Eastern District of Pennsylvania, to Cardinal, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 30 | 10/15/2010 | Mailing from Mutual, in the Eastern District of Pennsylvania, to Cardinal, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |
| 31 | 1/28/2011 | Mailing from Mutual, in the Eastern District of Pennsylvania, to Amerisource Bergen, in New Jersey, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |

| Count | Date | Description |
|-------|------|-------------|
| 32 | 2/11/2011 | Mailing from Mutual, in the Eastern District of Pennsylvania, to Cardinal, in Ohio, listing products to be refunded based on defendant GUARANTEED RETURNS' request. |

All in violation of Title 18, United States Code, Section 1341.

## COUNT THIRTY-THREE
### (Theft of Government Property)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.  Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.  Between in or about January 30, 2001 through on or about April 5, 2011, in the Eastern District of Pennsylvania, and elsewhere, defendants

### DEVOS LTD. D/B/A GUARANTEED RETURNS and
### DEAN VOLKES

embezzled, stole, purloined, and knowingly converted to their own use a thing of value of the United States in an amount over $1,000, that is, at least $14,000,000 worth of pharmaceutical products that were entrusted to GUARANTEED RETURNS to return for refund by the United States Department of Defense, the Veterans Administration, the District of Columbia Department of Health, and the Federal Bureau of Prisons, under the DoD-1501 Contract and the DoD-5201 Contract administered by the DSCP in the Eastern District of Pennsylvania.

In violation of Title 18, United States Code, Section 641.

## COUNT THIRTY-FOUR
### (Money Laundering Conspiracy)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1through 14 and 16 through 50 of Count One are incorporated here.

2.      Paragraphs 1 and 2 of Count Nineteen are incorporated here.

3.      From at least 1999, the exact date being unknown, through on or about October 22,

2014, in the Eastern District of Pennsylvania, and elsewhere, defendants

### DEVOS LTD. D/B/A GUARANTEED RETURNS,
### DEAN VOLKES and
### DONNA FALLON

conspired and agreed together and with others known and unknown to the grand jury, to conduct

and attempt to conduct financial transactions affecting interstate commerce, knowing that the

property involved in the financial transaction represented the proceeds of some form of unlawful

activity, and which, in fact, involved the proceeds of specified unlawful activity, that is, wire fraud

in violation of Title 18, United States Code, Section 1343, and mail fraud in violation of Title 18,

United States Code, Section 1341, knowing that the financial transactions were designed in part to

conceal or disguise the nature, location, source, ownership and control of the proceeds of such

specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendants committed the

following overt acts, among others, in the Eastern District of Pennsylvania, and elsewhere:

On or about February 17, 2011,

1.      An employee of defendant GUARANTEED RETURNS sent an email to Shire, in

the Eastern District of Pennsylvania, at approximately 12:40 p.m., regarding a request for refund

23

that had previously been transmitted.

    2.      An employee of defendant GUARANTEED RETURNS sent an additional email to Shire, in the Eastern District of Pennsylvania, at approximately 6:15 p.m., regarding a request for refund that had previously been transmitted.

        All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THIRTY-FIVE
### (Conspiracy to Obstruct Justice)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.　　　Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.　　　Beginning in 2008, special agents of DCIS were assisting a federal grand jury sitting in the Eastern District of Pennsylvania that was investigating the diversion of pharmaceutical products and funds owed to the United States for pharmaceutical products that had been returned through defendant GUARANTEED RETURNS.

3.　　　As part of that investigation, agents attempted to reconcile funds due to the United States under the DoD-1501 Contract.

4.　　　The federal grand jury investigation regarding these matters began in approximately February 2008.

On or about September 14, 2009,

5.　　　A special agent of DCIS met with defendant DEAN VOLKES at defendant GUARANTEED RETURNS's business premises in the Eastern District of New York.

6.　　　The agent told defendant DEAN VOLKES that DCIS was investigating funds owed to the United States for products returned through GUARANTEED RETURNS.

7.　　　The agent served defendant DEAN VOLKES with a federal grand jury subpoena for GUARANTEED RETURNS (the Grand Jury Subpoena), which required production of, among other items:

　　　　　a.　　　All contract files, modifications, task orders and documentation of all individual customers subscribing to the DoD-1501 Contract.

　　　　　b.　　　All records related to all return transactions, Return Goods Manifests and

- 25 -

packing slips relating to the DoD-1501 Contract.

 c. All records documenting the return of pharmaceuticals and all other products returned under the DoD-1501 Contract to wholesalers for the negotiated credit amount and the related accounting records documenting the receipt of the credit including correspondence, price lists, credit memos and other related records.

 d. All records of the calculation of the sales revenue recognized from each return and recorded pursuant to the terms of the DoD-1501 Contract.

 e. All records of payments made by Guaranteed Returns and the supporting calculations of the individual amounts directed into the account of each customer including the amount returned, the amount negotiated with the wholesaler and the amount of revenue recognized for each order relating to the DoD-1501 Contract.

 f. All records related to any internal review, verification, inspection, audit of return amounts, wholesaler credits and revenue recognized relating to the DoD-1501 Contract.

\* \* \* \*

 j. All internal correspondence, including electronic correspondence, between DEVOS LTD. D/B/A GUARANTEED RETURNS (including current and former employees) relating to Department of Defense contracts/subcontracts and Department of Defense solicitations.

 8. The DCIS agent also spoke with defendant DONNA FALLON about the DCIS investigation and the grand jury investigation.

9.      Defendants DEAN VOLKES and DONNA FALLON asserted on behalf of defendant GUARANTEED RETURNS that they would provide the documents required by the Grand Jury Subpoena on a rolling basis.

10.     From September 2009 through February 2010, defendants DEAN VOLKES, DONNA FALLON, and GUARANTEED RETURNS provided some records responsive to the Grand Jury Subpoena, but defendants VOLKES and FALLON claimed that certain items required by the Grand Jury Subpoena did not exist.

11.     In particular, defendants DEAN VOLKES, DONNA FALLON, GUARANTEED RETURNS, and their representatives asserted that GUARANTEED RETURNS maintained only three years of inventory records related to the returns transactions on the FilePro inventory control system.   Additionally, the defendants asserted that they could not provide the electronic communications of certain former employees of defendant GUARANTEED RETURNS, including Person #2 and Person #3, whose identities are known to the grand jury.

12.     In or about December 2009, a DCIS agent asked about the computers of former employees in order to review their electronic files.   The DCIS agent specifically asked about the hard drives of computers used by Person #2 and Person #3, in order to locate their electronic files. Defendant DONNA FALLON asserted that the hard drives of former employees were not maintained by defendant GUARANTEED RETURNS, and therefore the hard drives of Person #2 and Person #3 were not available to provide to the agents.

13.     In or about January 2010, Person #4, a member of the Information Technology department at defendant GUARANTEED RETURNS whose identity is known to the grand jury, provided defendant DONNA FALLON with computer hard drives belonging to Person #2 and

Person #3.   Defendant DONNA FALLON concealed those hard drives in a locked cabinet in her office and did not produce them pursuant to the Grand Jury Subpoena.

14.     On or about March 12, 2010, as a result of the delay in obtaining the records from defendant GUARANTEED RETURNS, a DCIS agent requested that GUARANTEED RETURNS allow the agent to forensically examine GUARANTEED RETURNS's inventory system in order to obtain the necessary documents.

15.     On or about March 16, 2010, the DCIS agent reiterated the request to forensically examine the computers of GUARANTEED RETURNS, and scheduled a visit to the business premises of GUARANTEED RETURNS, in the Eastern District of New York, for March 31, 2010.

On or about March 17, 2010,

16.     Defendant DEAN VOLKES met with defendant RONALD CARLINO and Person #1 and Person #4, and instructed defendant CARLINO and Person #4 to delete all computer inventory files in the FilePro system that were more than three years old.

17.     Defendant DEAN VOLKES asked defendant RONALD CARLINO and Person #1 and Person #4 whether there existed a software program that could ensure that files that had been deleted could not be recovered.   Defendant VOLKES instructed defendant CARLINO, Person #1, and Person #4 to acquire such a program and install it immediately.

18.     Defendant RONALD CARLINO and Person #1 copied the computer inventory files from the FilePro system onto defendant RONALD CARLINO's desktop computer. Defendant CARLINO and Person #1 then deleted all files more than three years old from the active FilePro system.

- 28 -

On or about March 30, 2010,

19.     Person #4 purchased "BCWipe" software over the internet from jetico.com, using defendant GUARANTEED RETURNS' corporate credit card to pay for the purchase.   The BCWipe software was advertised to "surgically clear selected data or full drives beyond recovery."

20.     Person #4 installed the BCWipe software on the server that hosted the FilePro system for defendant GUARANTEED RETURNS's inventory control software, in order to implement defendant DEAN VOLKES's instruction to ensure that deleted data could not be recovered from the server.

On or about March 31, 2010,

21.     A DCIS agent met with defendants DONNA FALLON and RONALD CARLINO at the premises of defendant GUARANTEED RETURNS.   The agent asked defendants FALLON and CARLINO why computer inventory records from the FilePro System prior to 2007 had not yet been produced pursuant to the Grand Jury Subpoena.   Although defendant CARLINO knew that he had deleted the records of the FilePro System at the specific instruction of defendant DEAN VOLKES, and also knew that he had retained a copy of the records on a separate computer drive, defendant CARLINO falsely stated that the files had been destroyed during a routine data purge in January 2010, and so were not recoverable.

22.     The DCIS agent reiterated the request for electronic files and emails of Person #2 and Person #3.   Although defendant DONNA FALLON had received the hard drives for the computers of Person #2 and Person #3 in January 2010, and retained them a locked file cabinet in her office, defendant FALLON falsely asserted that the files requested by the DCIS agent were not

available.

## The Conspiracy

23.     From on or about September 14, 2009 to on or about April 5, 2011, in the Eastern

District of New York, and elsewhere, defendants

### DEVOS LTD. D/B/A GUARANTEED RETURNS,
### DEAN VOLKES,
### DONNA FALLON and
### RONALD CARLINO

conspired and agreed, together and with others known and unknown to the grand jury, to commit

offenses against the United States, that is:

(a)     to corruptly alter, destroy, mutilate, and conceal records, documents and

other objects, with the intent to impair the integrity or availability of the

records, documents, and other objects for use in an official proceeding in

the Eastern District of Pennsylvania, and aided, abetted, counseled,

commanded, induced and procured the same, in violation of Title 18,

United States Code, Section 1512(c)(1);

(b)     in a matter within the jurisdiction of the United States Department of

Defense and the Defense Criminal Investigative Service, in the Eastern

District of Pennsylvania, to knowingly and wilfully falsify, conceal, and

cover up by any trick, scheme, and device material facts, namely that (1)

computer inventory records from the FilePro System prior to 2007 had not

been destroyed during a routine data purge in January 2010,and (2) that

such records were still available for production, in violation of Title 18,

United States Code, Section 1001; and

(c)     to knowingly alter, destroy, mutilate, and conceal records, documents, and

tangible objects, that is, (1) data held on computer equipment issued to and

used by Person #2 and Person #3 and (2) data stored in the FilePro system at

defendant GUARANTEED RETURNS, with the intent to impede, obstruct,

and influence the investigation and proper administration of a matter within

the jurisdiction of the Department of Defense, in the Eastern District of

Pennsylvania, which is an agency of the United States, in violation of Title

18, United States Code, Section 1519.

### Manner and Means

24.     It was part of the conspiracy that, in contemplation of and with actual knowledge of

the investigation described above, and for the purpose of destroying inventory records and other

electronic evidence of the diversion of indated drug products, in order to prevent the DCIS and the

federal grand jury from receiving or reviewing such evidence in the course of the investigation,

defendants GUARANTEED RETURNS, DEAN VOLKES, DONNA FALLON, and RONALD

CARLINO systematically destroyed the inventory records that had previously resided on the

FilePro system.

25.     It was further a part of the conspiracy that in contemplation of and with actual

knowledge of the investigation described above, and for the purpose of concealing inventory

records, electronic communications, and other evidence, in order to prevent the DoD Defense

Criminal Investigative Service and the federal grand jury from receiving or reviewing such

evidence in the course of the investigation, defendants GUARANTEED RETURNS, DEAN

VOLKES, DONNA FALLON, and RONALD CARLINO concealed the fact that alternative

copies of such records existed.

## Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendants GUARANTEED RETURNS, DEAN VOLKES, DONNA FALLON, and RONALD CARLINO committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

On or about March 17, 2010,

1.     Defendant DEAN VOLKES met with defendant RONALD CARLINO and Person #1 and Person #4, and instructed them to delete all computer inventory files in the FilePro system that were more than three years old.

2.     Defendant DEAN VOLKES instructed defendant RONALD CARLINO and Person #4 to acquire a software program to ensure that deleted files could not be recovered, and to install the program immediately.

3.     Defendant RONALD CARLINO and Person #1 copied the inventory files from the FilePro system onto defendant CARLINO's desktop computer, and then wrote and implemented a software code to delete all records more than three years old from the active FilePro system.

4.     On or about March 30, 2010, Person #4, acting on the instructions of defendant DEAN VOLKES, purchased and installed a program on the FilePro System computer server to overwrite all deleted records on the FilePro server, so that deleted files could not be recovered.

On or about March 31, 2010,

5.     Defendants DONNA FALLON and RONALD CARLINO met with a DCIS agent.

6.     Defendant RONALD CARLINO falsely told the DCIS agent that the inventory

files required by the Grand Jury Subpoena had been destroyed during a routine data purge in January 2010 and were not recoverable.

7.     Defendant RONALD CARLINO concealed from the DCIS agent the fact that the inventory files required by the Grand Jury Subpoena were stored on an alternate computer and were available for review.

8.     Defendant DONNA FALLON concealed from the DCIS agent that the hard drives of Person #2, Person #3, and two other persons who had worked on the DCIS contract had been located and were concealed in a locked file cabinet in defendant FALLON's office.

All in violation of Title 18, United States Code, Section 371.

## COUNT THIRTY-SIX
### (Obstruction of Justice)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.      Paragraphs 2 to 22 and 24 to 25 and Overt Acts 1 through 8 of Count Thirty-Five are incorporated here.

3.      From in or about January 2010 to on or about April 5, 2011, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,
DEAN VOLKES,
DONNA FALLON and
RONALD CARLINO**

did corruptly alter, destroy, mutilate and conceal records, documents, and other objects, that is, e-mail communications and records of sales representatives that were stored on computer equipment issued to or used by Person #2, with the intent to impair the integrity or availability of those records for use in an official proceeding in the Eastern District of Pennsylvania, and aided, abetted, counseled, commanded, induced, and procured the same.

In violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## COUNT THIRTY-SEVEN
### (Obstruction of Justice)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.      Paragraphs 2 through 22 and 24 and 25, and Overt Acts 1 through 8 of Count Thirty-Five are incorporated here.

3.      From in or about January 2010 to on or about April 5, 2011, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,**
**DEAN VOLKES,**
**DONNA FALLON and**
**RONALD CARLINO**

did corruptly alter, destroy, mutilate and conceal records, documents, and other objects, that is, e-mail communications and records of sales representatives that were stored on computer equipment issued to or used by Person #3, with the intent to impair the integrity or availability of those records for use in an official proceeding, in the Eastern District of Pennsylvania, and aided, abetted, counseled, commanded, induced, and procured the same.

In violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## COUNT THIRTY-EIGHT
### (Obstruction of Justice)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.       Paragraphs 2 through 22 and 24 and 25, and Overt Acts 1 through 8 of Count Thirty-Five are incorporated here.

3.       From in or about January 2010 to on or about April 5, 2011, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,**
**DEAN VOLKES,**
**DONNA FALLON and**
**RONALD CARLINO**

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to and used by Person #2, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Department of Defense, which is an agency of the United States, in the Eastern District of Pennsylvania, and aided, abetted, counseled, commanded, induced, and procured the same.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY-NINE
### (Obstruction of Justice)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2. Paragraphs 2 through 22 and 24 and 25, and Overt Acts 1 through 8 of Count Thirty-Five are incorporated here.

3. From in or about January 2010 to on or about April 5, 2011, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,
DEAN VOLKES,
DONNA FALLON and
RONALD CARLINO**

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to and used by Person #3, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Department of Defense, which is an agency of the United States, in the Eastern District of Pennsylvania, and aided, abetted, counseled, commanded, induced, and procured the same.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FORTY
### (False Statements)

1.      Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.      Paragraphs 2 through 22 and 24 and 25, and Overt Acts 1 through 8 of Count

Thirty-Five are incorporated here.

3.      On or about March 31, 2010, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,
DEAN VOLKES,
DONNA FALLON and
RONALD CARLINO**

in a matter within the jurisdiction of the Department of Defense, which is an agency of the United

States, in the Eastern District of Pennsylvania, knowingly and willfully falsified, concealed and

covered up a material fact, and made materially false, fictitious, and fraudulent statements and

representations, that is, concealing email communications and records of sales representatives that

were stored on computer equipment issued to or used by Person #2.

All in violation of Title 18, United States Code, Section 1001(a)(1), (a)(2).

## COUNT FORTY-ONE
### (False Statements)

1.      Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.      Paragraphs 2 through 22 and 24 and 25, and Overt Acts 1 through 8 of Count

Thirty-Five are incorporated here.

3.      On or about March 31, 2010, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,**
**DEAN VOLKES,**
**DONNA FALLON and**
**RONALD CARLINO**

in a matter within the jurisdiction of the Department of Defense, which is an agency of the United

States, in the Eastern District of Pennsylvania, knowingly and willfully falsified, concealed and

covered up a material fact, and made materially false, fictitious, and fraudulent statements and

representations, that is, concealing email communications and records of sales representatives that

were stored on computer equipment issued to or used by Person #3.

All in violation of Title 18, United States Code, Section 1001(a)(1), (a)(2).

## COUNT FORTY-TWO
### (Obstruction of Justice)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2. Paragraphs 2 through 22 and 24 and 25, and Overt Acts 1 through 8 of Count Thirty-Five are incorporated here.

3. On or about March 17, 2010, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,**
**DEAN VOLKES,**
**DONNA FALLON and**
**RONALD CARLINO**

did corruptly alter, destroy, mutilate and conceal records, documents, and other objects, that is, data stored in the FilePro computerized inventory control system at DEVOS LTD. D/B/A GUARANTEED RETURNS with the intent to impair the integrity or availability of those records for use in an official proceeding, in the Eastern District of Pennsylvania, and aided, abetted, counseled, commanded, induced, and procured the same.

In violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## COUNT FORTY-THREE
### (Obstruction of Justice)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.     Paragraphs 2 through 22 and 24 and 25, and Overt Acts 1 through 8 of Count Thirty-Five are incorporated here.

3.     On or about March 17, 2010, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,**
**DEAN VOLKES,**
**DONNA FALLON and**
**RONALD CARLINO**

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data stored in the FilePro computerized inventory control system at DEVOS LTD. D/B/A GUARANTEED RETURNS, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Department of Defense, which is an agency of the United States, in the Eastern District of Pennsylvania, and aided, abetted, counseled, commanded, induced, and procured the same.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FORTY-FOUR
### (False Statements)

1.      Paragraphs 1 through 14 and 16 through 50 of Count One are incorporated here.

2.      Paragraphs 2 through 22 and 24 and 25, and Overt Acts 1 through 8 of Count

Thirty-Five are incorporated here.

3.      On or about March 31, 2010, and elsewhere, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,
DEAN VOLKES,
DONNA FALLON and
RONALD CARLINO**

in a matter within the jurisdiction of the Department of Defense, which is an agency of the United

States, in the Eastern District of Pennsylvania, knowingly and willfully falsified, concealed and

covered up a material fact, and made materially false, fictitious, and fraudulent statements and

representations, that is, concealing the data stored in the FilePro computerized inventory control

system at GUARANTEED RETURNS.

All in violation of Title 18, United States Code, Section 1001(a)(1), (a)(2).

## NOTICE OF FORFEITURE #1

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.     As a result of the violations of Title 18, United States Code, Sections 1341,

1343 and 1512, set forth in this Indictment, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,**
**DEAN VOLKES, and**
**DONNA FALLON**

shall forfeit to the United States of America any property constituting, or derived from, proceeds

obtained directly or indirectly from the commission of such offenses, including, but not limited to

the sum of $116,193,369.

       2.     If any of the property described above, as a result of any act or omission of

the defendants:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred to, sold to, or deposited with a third party;

        c.     has been placed beyond the jurisdiction of this Court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided
               without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property subject to forfeiture.

       All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and 28 U.S.C.

§ 2461.

–43–

### NOTICE OF FORFEITURE #2

1.       As a result of the violations of Title 18, United States Code, Section 1956, set

forth in this indictment, defendants

**DEVOS LTD. D/B/A GUARANTEED RETURNS,
DEAN VOLKES, and
DONNA FALLON**

shall forfeit to the United States of America any property, real or personal, involved in such offense,

or traceable to such property, including but not limited to:

a.       All assets within Merrill Lynch Account Number 843-38521 in the name of defendant DEAN VOLKES

b.       All assets within Merrill Lynch Account Number 843-14166 in the name of Donna Fallon Trustee, by Dean Volkes 2012 Ashley Judson Irrevocable Trust

c.       18 Laurel Path, Port Jefferson, New York

d.       102 Village Lane, Carbondale, Colorado

e.       Lady Banks Lane, Ravenel, South Carolina

f.       26 Stonehouse Road, Winhall, Vermont

g.       2006 Grady white 28 foot pleasure craft, Hull # NTLBY285a606, New York

registration number 4670MB.

2.       If any of the property described above, as a result of any act or omission of

the defendants:

a.       cannot be located upon the exercise of due diligence;

b.       has been transferred to, sold to, or deposited with a third party;

c.       has been placed beyond the jurisdiction of this Court;

d.       has been substantially diminished in value; or

e.       has been commingled with other property which cannot be divided

without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of the defendants, up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 982(a)(1).

**A TRUE BILL:**


_____

**FOREPERSON**


**ZANE DAVID MEMEGER**
**United States Attorney**