IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : CRIMINAL ACTION |
| | : |
| DEVOS LTD. d/b/a Guaranteed Returns, et al. | : NO. 14-574-1 |

**DEFENDANT DEVOS LTD. d/b/a GUARANTEED RETURNS' REPLY IN SUPPORT OF ITS MOTION TO COMPEL**

Defendant Devos Ltd. d/b/a Guaranteed Returns ("Guaranteed Returns"), through its undersigned counsel, and pursuant to Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure, submits this reply in further support of its motion to compel discovery of statements that the government contends are binding on the corporation but which the government has refused to produce, and also in opposition to the government's request for a protective order pursuant to Rule 16(d)(1).

**Preliminary Statement**

The government has patently failed to make the necessary showing of "good cause" to "deny, restrict, or defer discovery" pursuant to Rule 16(d)(1). As we demonstrated in our initial papers, because an organizational defendant literally does not know what binding statements and actions its agents have allegedly made, and for that reason is unable to defend itself, Rule 16(a)(1)(C) requires the government to produce this discovery to avoid trial by ambush. *See U.S. v. Maury*, 695 F.3d 227, 253 (3d Cir. 2012) ("[b]ecause an organizational defendant may not know what its officers or agents have said or done in regard to a charged offense, it is important that it

1

have access to statements made by persons whose statements or actions could be binding on the defendant. Rule 16(a)(1)(C) thus entitles an organizational defendant to those very statements.") (quotation and citation omitted)

Guaranteed Returns is a large company which over the years set forth in the indictment (i.e., 1999 through 2011) has had over one thousand employees. While today it has approximately 175 employees working in New York, during the years in question it had a workforce that generally exceeded 300 employees.[1] As a result, we anticipate that the amount of discovery – the number of statements potentially binding on the company – will be considerably larger than what might otherwise pertain to an individual defendant (who of course might be expected to know what he or she said and did). Most importantly, in order to prepare for trial and defend itself, the company needs to ascertain and develop an understanding of the magnitude, scope and substance of the statements that the government intends to use against it at trial.

Though the government argues that a protective order will not prejudice Guaranteed Returns, it cites no authority for the proposition that the government can unilaterally disregard a court order to provide discovery (in this case, by July 17, 2015), and then wait until later to secure the Court's imprimatur.

**There is no Realistic Threat of Witness Intimidation**.

We are unaware of any act of intimidation or physical violence engaged in by any defendant in this case. We have been provided two search warrants, which include no mention of witness intimidation or violence. There is no mention of intimidation or violence in the indictment. And, since the filing of the indictment there have been no motions made by the government based on an allegation that any defendant or agency employee has retaliated against any witness.

---

[1] Since the indictment the company has been forced to let go of over 100 employees.

More importantly, since the indictment the company has completely reorganized, putting new management in place, hiring an independent monitor and installing a compliance officer. The company for the first time in its existence has an outside general counsel. And, the sole shareholder, defendant Dean Volkes, voluntarily stepped down from his position and transferred his interests in the company to an independent trustee. The specter of retaliation, which we think is ludicrous, is not only nonexistent, it could never happen.

In fact, as opposed to taking any adverse action towards cooperating witnesses, the Company has kept employees on its payroll even when it believed that they were cooperating with the government. The only people who have been released from employment have been let go during company-wide downsizing. We believe the government is aware of this. In short, given the above change in corporate control and outside oversight, it is extremely difficult to see how the individual Defendants could adversely impact the employment conditions of any present employees who have made statements or committed actions that are binding on the Company.

The government claims that an ex parte affidavit it has submitted alleges that "personnel associated with GRX have been terminated or demoted when they challenged the actions of [Defendant Dean] Volkes in connection with the indate scheme." (Government's Br. at 7-8). Even if true, by the government's own description these individuals can suffer no greater harm – they already have been terminated or demoted. However, we do not concede the veracity of these allegations, since many of the individuals that we believe may have spoken to the government were themselves thieves who the company learned had been stealing. Indeed, in one of the search warrant applications, one of these employee informants was quoted as stating that what they were doing was justified because they were stealing from a thief (referring to defendant Volkes). Nevertheless, based on our review of all the employees who have been released from the company,

3

we find these allegations hard to believe.

Finally, we note that the indictment, which is filled with numerous allegations relating to the destruction and/or hiding of documents relevant to a government investigation, makes no allegation, or even suggestion, that witness intimidation was ever an issue. We must assume that if something along these lines had ever occurred, we would have seen it charged or at least mentioned.

### The Government has Failed to Cite any Apposite Authority

The cases that the government cites are wholly inapposite, since for the most part they address the issues arising from disclosure to individual violent criminals who have the potential to threaten, and in some cases the history of threatening, the lives of potential witnesses. The case here does not include any allegation or suggestion of violent acts. Yet the government does not cite a single case where a white collar defendant was precluded from discovery that the government was required to provide. For example, in *U.S. v. Napue,* 834 F.2d 1311, 1321 (7th Cir. 1987), which the government cites, the Seventh Circuit upheld the trial court's refusal to compel the government to provide the defendant, who was a large-scale drug trafficker who maintained a large arsenal of guns, "with a list of all prospective government witnesses" in light of the government's "evidence that [defendant] was responsible for threatening, assaulting and murdering various informants and people close to them." Similarly, in *U.S. v. Aiken*, 76 F.Supp.2d 13339, 1342-43 (S.D.Fla. 1999), which the government also cites, the court granted a protective order because there was a "real danger" that violent defendants who had been indicted on charges including conspiracy to commit murder in aid of racketeering might retaliate against government witnesses, and because the defendants had failed to "articulate[] any compelling need for disclosure other than the general need to prepare for cross-examination." *Government of Virgin Islands v.*

4

*Martinez*, 847 F.2d 125, 127 (3d Cir. 1988), was a narcotics trafficking case where the defendant sought the name of the informant prior to trial. Suffice it to say that the Court upheld the lower court's refusal to do so, citing its grave concerns for the safety of the informant. And in *U.S. v. Higgs*, 713 F.2d 39, 45 (3d Cir. 1983), another narcotics trafficking prosecution, the Third Circuit agreed that the government need only disclose the names and addresses of certain witnesses on the day they were to testify, but that decision was in response to "specific corroborated evidence of threats" made against witnesses by the defendants." In this case there are no allegations of intimidation, violence, or threats. Nevertheless the government seeks to bootstrap allegations of withholding or destruction of documents into some notion of danger and intimidation – without revealing to counsel what the connections might be.

The same infirmities undermine the government's reliance on other cases it cites: In *U.S. v. Mills*, 641 F.2d 785, 789-90 (9th Cir. 1981) the Third Circuit found that the statements of witnesses whom the government had interviewed but did not intend to present at trial, and which the defendants sought to have produced, were governed by the Jencks Act, not Rule 16, and that those statements did not have to be produced "where the witnesses are prison inmates who live in fear of retaliation" from the defendants who were fellow inmates who had been indicted for murder and were implicated in "at least 14 homicides" in prison. In *U.S. v. Roberts*, 793 F.2d 580, 582 (4th Cir. 1986) a serious drug trafficking prosecution, the court permitted the indictment to be filed under seal due to "witness security problems." It can hardly be the case in a matter such as this that any witness has been placed in witness protection, or that there even was any consideration to take such a drastic step, given the nature of the allegations in what is a relatively routine business crime such as this.

*U.S. v. Pelton*, 578 F.2d 701, 707-08 (8th Cir. 1978) (also cited) involved charges arising

out of an illegal prostitution ring; there the Court held that the defendant was not improperly prejudiced by the imposition of a protective order based on the government's assertion that disclosure of tape recordings would reveal the identity of cooperating witnesses whose safety would be jeopardized. Significantly, the Court also concluded that there was no exculpatory material and that the tapes were not introduced at trial. And finally, the government cites *U.S. v. Gallo*, 654 F. Supp. 463, 480 (E.D.N.Y. 1987) (whose decision was repudiated in a mandamus proceeding, *In re United States,* 834 F.2d 283 (2d Cir.1987)) which concerned whether organized crime defendants were entitled to disclosure of statements admissible under 801(d)(2)(E) to a co-defendant, but did not concern Rule 16(a)(1)(C) discovery.

The ex parte affidavit should be unsealed if the Court intends to consider it in reaching a decision here. By presenting an ex parte affidavit, the government is by definition only giving the Court a one-sided view of the issue, thereby depriving the court and the parties of the chance to further explore the supposed underpinnings of the government's overheated and dramatic allegations. The government has made no effort to justify its unilateral ex parte filing, and cannot do so in any event. *See United States v. Carmichael,* 232 F.3d 510, 517 (6th Cir.2000), *cert. denied*, 532 U.S. 974, 121 S. Ct. 1607, 149 L.Ed.2d 472 (2001) ("As a general rule of thumb, in all but the most exceptional circumstances, *ex parte* communications with the court are an extraordinarily bad idea.... [G]iving the government private access to the ear of the court is not only a gross breach of the appearance of justice but also a dangerous procedure."); *U.S. v. Napue*, 834 F.2d 1311, 1318 (7th Cir. 1987) ("*[E]x parte* communications are disfavored. They should be avoided whenever possible and, even when they are appropriate, their scope should be kept to a minimum.") (collecting cases); *U.S. v. Wecht*, 484 F.3d 194, 227 (3d Cir. 2007) ("*ex parte* communications run contrary to our adversarial trial system") (quotation and citation omitted).

**Conclusion**

For the foregoing reasons, the Court should grant Guaranteed Returns' motion to compel and deny in its entirety the government's motion for a protective order.

Dated: New York, New York
       August 17, 2015

       **Respectfully Submitted,**

       **SCHLAM STONE & DOLAN LLP**

**By:**    /s/
       Douglas E. Grover
       26 Broadway – 19th Floor
       New York, New York 10004
       Telephone No.: (212) 344-5400
       Facsimile No.: (212) 344-7677
       DGrover@SchlamStone.com

       *-and-*

       Ann C. Flannery, Esq.
       Law Offices of Ann C. Flannery, LLC
       1835 Market Street, Suite 2700
       Philadelphia, PA 19103
       Telephone No.: 215.636.9002
       Facsimile No.: 215.636.9899
       acf@annflannerylaw.com

       *Attorneys for Defendant Devos Ltd. d/b/a Guaranteed Returns*