### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : CRIMINAL ACTION |
| | : |
| DEVOS LTD. d/b/a Guaranteed Returns, et al. | : NO. 14-574 (PBT) |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE MOTION TO COMPEL

Defendants Devos Ltd. d/b/a Guaranteed Returns ("Guaranteed Returns"), Dean Volkes, and Donna Fallon (collectively, "Defendants"), by and through the undersigned, submit this memorandum of law in support of their motion for reconsideration of this Court's order (the "Order") denying their motion to compel the production of information regarding the dissemination of, and response rate to, the questionnaire that the government recently sent to Guaranteed Returns' customers (the "Motion").

### PRELIMINARY STATEMENT

Defendants brought the Motion on December 29, 2016. The government submitted opposition papers on January 6, 2017, and those opposition papers challenged the relevance of the information sought regarding the government's outreach to customers of Guaranteed Returns. Further, the government's opposition relied on both factual and legal arguments that, as discussed below, lacked essential context. Nonetheless, before the Defendants were able to respond to the government's opposition and submit their reply, the Court denied the Motion by the Order on January 11, 2017.

The Defendants respectfully request that the Court reconsider its denial of their motion seeking evidence in this case that is both exculpatory and material to the defense. In our moving

papers, we argued that Defendants are entitled to information concerning the dissemination of, and response rate to, the government's outreach to Guaranteed Returns' customers both as exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and because it is "material to preparing the defense" within the meaning of Fed. R. Crim. P. 16(a)(1)(E)(i).  In particular, in a situation in which it appeared that the government sought responses from hundreds or even thousands of customers of Guaranteed Returns, all of whom the government labeled as "victims" of a fraud, the fact that only a vastly smaller number of those customers appear to have responded to the government's inquiry would strongly undermine the government's case.  Indeed, the information that the Defendants seek regarding the government questionnaires (which includes the identity and number of customers to which the questionnaire were sent, and the identity and number of customers which responded), would not be burdensome or even difficult for the government to provide, and will lend powerful support to the Defendants' position that Guaranteed Returns' customers did not place importance on their indates, did not seek credit for those indates, and chose, for their own reasons, not to seek to modify the terms of their agreements with the company so that they would be entitled to receive indate credit.  The evidence the Defendants seek would thus support the argument that the customers of Guaranteed Returns were not victims of a fraud, do not view themselves as victims of a fraud, and were not aggrieved by what the government has now labeled the "theft" of indated pharmaceuticals.

In its opposing papers (annexed at Exhibit A), the government implied that recipients of the letter it had sent to "potential victims" were **not** told that they had been determined to be victims of a fraud.  *See* Gov. Opp'n at 1 (attaching form of letter sent to "potential victims" and stating "The letter also notified the entity that the defendants are presumed innocent and provides the entity with the scheduled trial date.").  Despite this carefully-worded suggestion, the government

did not directly deny in its opposition brief that it had told the customers that they had been identified as victims of a fraud – nor could it do so. The very form letter attached to the government's opposition states in its opening paragraph: "I am contacting you because **you have been identified by law enforcement as a victim** during the investigation of the above criminal case." (Emphasis supplied.)

The government's letter unmistakably conveyed the government's belief in Defendants' guilt, invited the Defendants' customers to indicate whether they share in that belief, and encouraged the company's customers to provide evidence supporting that belief. If, as appears to be the case, the majority of customers did not adopt the presumptions of the government's survey, or even respond to it, this can only serve to strengthen the Defendants' arguments and provide them with critical *Brady* material that they are entitled to present at trial. We therefore urge the Court to reconsider its denial of the Defendants' motion, and further, to direct the government to provide the Defendants with the narrow and targeted information they seek.

## ARGUMENT

Motions for reconsideration are proper in criminal cases. *See, e.g., United States v. Fiorelli,* 337 F.3d 282, 286 (3d Cir. 2003); Local Crim. R. § 1.2 (stating that Local Civil Rule 7.1(g), which pertains to motions for reconsideration or reargument, is fully applicable in all criminal proceedings). "[A] trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009), *quoting Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979). A motion for reconsideration generally requires showing: (1) an intervening change in the controlling law;

(2) the availability of new evidence that was not available when the court rendered its decision; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). However, "'[s]o long as [a] district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.'" *In re Anthanassious*, 418 F. App'x 91 (3d Cir. 2011), *quoting United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973).

As discussed above and at Point A, the factual presentation in the government's opposing brief created an incomplete and misleading record on the Motion. Moreover, the government's legal citations were procedurally inapposite and readily distinguishable, and Defendants were preparing to demonstrate these points in a reply brief when the Motion was decided. As discussed herein, the Motion should be granted upon reconsideration.

### A. The Factual And Legal Arguments In The Government's Opposition To The Motion Lacked Essential Context Confirming That The Materials Sought Are *Brady* Material, and Are Subject to Production Under Rule 16

During the forthcoming trial in this matter, a major aspect of the defense to the alleged indate-related fraud charges will be as follows: except for that subset of customers as to whom the company had specifically agreed to age and provide payment for indated product, the customers of Guaranteed Returns did not secure any right to payment for their indates and, pursuant to their contractual agreements with the company, could have had no expectation of such payment. In other words, a significant aspect of the theory of the defense will be that, if customers wanted to receive credit for their indated drugs, as opposed to the expired drugs that made up the overwhelming majority of returns, they were free to contract for it – and the vast majority did not.

In its opposition to the Motion, the government provided no cases addressing whether the

rate of response to an outreach to customers of a defendant charged with fraud, or the identities of those to whom it was sent, ought to be produced. Rather, each of the cases it cited holds only that, on post-trial review, it was not an abuse of discretion for the court to prevent a fraud defendant from introducing evidence that certain of its customers did not regard themselves as misled by its practices. *See United States v. Ciccone*, 219 F.3d 1078, 1082 (9th Cir. 2000) ("Where, as here, the proffered evidence relates not to the nature of the scheme or the defendant's intent, but rather to the uninformed opinion of the victims, it is not an abuse of discretion to exclude it."); *United States v. Elliott*, 62 F.3d 1304, 1309 (11th Cir. 1996) ("the district court did not err by excluding the proffered testimony [of satisfied customers] as irrelevant"); *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991) ("The district court is accorded wide latitude in determining the relevancy of evidence. . . . We find that the trial judge did not abuse her discretion in excluding the proffered testimony [of satisfied customers]"); *United States v. Diamond*, 430 F.2d 688, 693 (5th Cir. 1970) ("complimentary letters may very well be an indication that the fraud is succeeding rather than an indicia of good intent. In view of the wide latitude accorded trial court in the determination of relevancy of evidence we cannot say that there was an abuse of discretion in this case.")

However, such post-trial cases simply do not address whether the foregoing type of material should be produced *prior* to trial, when it may lead to separately admissible evidence, and when it will provide defendants with exculpatory information to which they are constitutionally entitled. And, as illustrated by their references to "the uninformed opinion of the victims" and to customer satisfaction as potentially "an indication that the fraud is succeeding," none of these cases appear to have involved one of the key facts that is present here: the government's suggestion to a defendant's customers that they were specifically identified as

5

victims of a fraud, together with a request for information from the customer which would ostensibly support the government's view of the facts.

Further, the government has relied on these procedurally inapposite cases to argue that the rate of customer response to its survey is irrelevant to the Defendants' state of mind. But the critical question of whether Defendants had a criminal state of mind – *i.e.*, an intention to defraud their customers – cannot properly be assessed without considering the customers' expectations. Defendants will argue that it was their understanding that customers who did not specifically contract for payment on indates were not expecting such payment; that this lack of an expectation of payment was contemplated by both Guaranteed Returns and the vast majority of its customers, pursuant to clear agreements between them; and that Defendants therefore did not have criminal intent when salvaging the value of indates for which customers did not seek credit. Evidence that customers were specifically told by the government that they had been victimized by not getting paid for indates, but *did not even respond to the survey,* provides essential support to the Defendants' claim that their customers received the services they demanded and expected, and that no one was defrauded. In other words, such evidence bolsters the credibility of the Defendants' argument that they did not defraud their customers, that they had no intent to defraud, and that their customers were not misled. Moreover, if, as appears to be the case, a large majority of the customers who were contacted by the government and told they had been identified as a victim of fraud *nonetheless declined a direct solicitation to complain about the conduct of Defendants*, that powerfully suggests that the supposed victims were well aware of the fact that they would not get credit for their indates, and had not been misled or deceived. In the pretrial posture, while issues of admissibility have yet to arise, such materials are plainly relevant to the defense for purposes of Rule 16, and unquestionably qualify as *Brady*.

victims of a fraud, together with a request for information from the customer which would ostensibly support the government's view of the facts.

Further, the government has relied on these procedurally inapposite cases to argue that the rate of customer response to its survey is irrelevant to the Defendants' state of mind. But the critical question of whether Defendants had a criminal state of mind – *i.e.*, an intention to defraud their customers – cannot properly be assessed without considering the customers' expectations. Defendants will argue that it was their understanding that customers who did not specifically contract for payment on indates were not expecting such payment; that this lack of an expectation of payment was contemplated by both Guaranteed Returns and the vast majority of its customers, pursuant to clear agreements between them; and that Defendants therefore did not have criminal intent when salvaging the value of indates for which customers did not seek credit. Evidence that customers were specifically told by the government that they had been victimized by not getting paid for indates, but *did not even respond to the survey,* provides essential support to the Defendants' claim that their customers received the services they demanded and expected, and that no one was defrauded. In other words, such evidence bolsters the credibility of the Defendants' argument that they did not defraud their customers, that they had no intent to defraud, and that their customers were not misled. Moreover, if, as appears to be the case, a large majority of the customers who were contacted by the government and told they had been identified as a victim of fraud *nonetheless declined a direct solicitation to complain about the conduct of Defendants*, that powerfully suggests that the supposed victims were well aware of the fact that they would not get credit for their indates, and had not been misled or deceived. In the pretrial posture, while issues of admissibility have yet to arise, such materials are plainly relevant to the defense for purposes of Rule 16, and unquestionably qualify as *Brady*.

Finally, while the government argued in its opposition papers that there may be other reasons why customers did not to respond to the surveys, that entirely misses the point. Perhaps, as the government speculates, letters to customers were "never delivered," or were "sent to an incorrect address." Gov. Opp'n at 2. Or perhaps the government is correct when it surmises that a customer's legal department may have received the questionnaire, and the formulation of a response may be "still in progress." (*Id*.) Yet what the government somehow fails to recognize is another entirely plausible alternative interpretation, which just happens to be the very issue that the Defendants seek to establish at trial—that customers were not in any way deceived or misled, and that the lack of any fraud is confirmed by a customer's decision not to respond to the government's survey.

Of course, the government is clearly entitled to disagree with the Defendants' interpretation of the facts. The government may argue at trial about the competing inferences to be drawn from the evidence, and about the weight of the evidence that the Defendants seek to obtain. What the government may *not* properly do, however, is suggest that the only inferences that would be available to a jury in this case are those the government urges in its opposition, and that evidence should be withheld as a result. In fact, the government's argument in its opposition brief is in reality nothing more than a thinly veiled relevance argument, and an attempt to assert that the lack of a response to the questionnaires cannot possibly have any bearing on the facts in dispute. Yet such a relevancy argument is not only premature, but also is in clear disregard of the minimal threshold of relevance set forth in Rule 401 of the Federal Rules of Evidence. *See* Fed. R. Evid. 401 (evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," and if the fact "is of consequence in determining the action.") Here,

7

where details regarding the lack of customer responses to the government's survey would have any tendency to support the Defendants' assertion that customers were on notice about their indates, and that the customers were not defrauded in any way, the evidence is plainly relevant under Rule 401, and may not properly be withheld.

### B. The United States Attorneys' Manual Recognizes That The Government Should Produce The Materials Sought By The Motion

Notably, the government's refusal to produce the evidence sought in this motion not only is inconsistent with the government's *Brady* obligation, its obligations under Rule 16, and basic principles of relevance. The government's position also disregards relevant provisions and directions of the United States Attorneys' Manual that, while admittedly creating no rights for criminal defendants, underscore the obvious impropriety of the government's position and the significant appellate risks it creates.

The United States Attorneys' Manual (relevant excerpts of which are annexed at Exhibit B) clearly instructs that, as to *Brady* material, "it is sometimes difficult to assess the materiality of evidence before trial," and as a result, "prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence." United States Attorneys' Manual, § 9-5.001(B)(1).

Moreover, under the policy announced by the Manual, the government is to produce, in addition to materials strictly required by *Brady*: (1) "relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence" (§ 9-5.001(C)); (2) "information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and

8

acquittal of the defendant for a charged crime" (§ 9-5.001(C)(1));  and (3) "information that either casts a substantial doubt upon the accuracy of any evidence—including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence."  According to the Manual, such information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime." (§ 9-5.001(C)(2)).

Two additional statements from the United States Attorneys' Manual are relevant here:

- "Unlike the requirements of *Brady* and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence." § 9-5.001(C)(3).

- "While items of information viewed in isolation may not reasonably be seen as meeting the standards outlined in paragraphs 1 and 2 above [§ 9-5.001(C)(1&2)], several items together can have such an effect. If this is the case, all such items must be disclosed. § 9-5.001(C)(4).

The question, then, is not whether the rate of response to the government's questionnaires would necessarily produce admissible evidence sufficient to change the outcome of the case, but rather whether, considered alongside other evidence, such evidence could rebut any element of a crime that has been charged.  The information sought here concerning the response rate to the government's survey could do just that, as discussed above at Point A.  And as recognized by § 9-5.001(B)(1) of the United States Attorneys' Manual, because "it is sometimes difficult to assess the materiality of evidence before trial . . . prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence."

For reasons that are unclear, the government ignores these provisions of the Manual, and seeks to withhold what plainly qualifies as *Brady* material and information that is material to the

9

defense. But the Court is fortunately not constrained by the government's suddenly cramped reading of its disclosure obligations, or by the government's inexplicable efforts to withhold evidence that so clearly must be produced. Accordingly, to protect the constitutional rights of the Defendants, comply with Rule 16, and enable the Defendants to advance appropriate defenses at trial, the Court should compel the government to produce the materials that it has so strenuously sought to withhold.

## CONCLUSION

For all of the forgoing reasons, Defendants respectfully request that the Court reconsider its Order of January 11, 2017 and grant the Defendants' Motion.

Dated: New York, New York
      January 17, 2017

Respectfully Submitted,

| **SCHLAM STONE & DOLAN LLP** | **LAW OFFICES OF ANN C. FLANNERY, LLC** |
|---|---|
| By: /s/ Douglas E. Grover<br>Douglas E. Grover<br>Thomas A. Kissane<br><br>26 Broadway<br>New York, New York 10004<br>Tel. 212.344.5400<br>Fax 212.344.7677<br>dgrover@schlamstone.com<br>tkissane@schlamstone.com<br><br>*Attorneys for Defendant Devos Ltd.*<br>*d/b/a Guaranteed Returns* | By: /s/ Ann C. Flannery<br>Ann C. Flannery<br><br>1835 Market Street, Suite 2700<br>Philadelphia, Pennsylvania 19103<br>Tel. 215.636.9002<br>Fax 215.636.9899<br>acf@annflannerylaw.com |

|  |  |  |  |
|---|---|---|---|
| **MORVILLO ABRAMOWITZ** <br> **GRAND IASON & ANELLO P.C.** | | **PROSKAUER ROSE LLP** | |
| By: | /s/ Elkan Abramowitz | By: | /s/ Robert J. Cleary |

<div style="display:flex">

**MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO P.C.**

By: /s/ Elkan Abramowitz
Elkan Abramowitz
Robert M. Radick
Miriam L. Glaser
Ashley C. Burns

565 Fifth Avenue
New York, New York 10017
Tel. 212.856.9600
Fax. 212.856.9494
eabramowitz@maglaw.com
rradick@maglaw.com
mglaser@maglaw.com
aburns@maglaw.com

*Attorneys for Defendant Dean Volkes*

**PROSKAUER ROSE LLP**

By: /s/ Robert J. Cleary
Robert J. Cleary
William C. Komaroff
Samantha Springer
Julia D. Alonzo

11 Times Square
New York, New York 10036
Tel.  212.969.3000
Fax  212.969.2900
rjcleary@proskauer.com
wkomaroff@proskauer.com
sspringer@proskauer.com
jalonzo@proskauer.com

*Attorneys for Defendant Donna Fallon*

</div>