IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| v. | : **CRIMINAL ACTION** |
| | : |
| **DEVOS LTD. d/b/a Guaranteed Returns, et al.** | : **NO. 14-574 (PBT)** |
| | : |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTIONS *IN LIMINE***

**TABLE OF CONTENTS**

I.  THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING EVIDENCE OR ARGUMENT THAT CONCEALMENT MONEY LAUNDERING TOOK PLACE PRIOR TO THE DISTRIBUTION OF FUNDS FROM PHARMACEUTICAL MANUFACTURERS ................................................................... 1

   A.  During Briefing and Oral Argument on the Defendants' Motion to Dismiss the Money Laundering Count, the Government Unequivocally Stated that Acts Constituting Concealment Took Place Only After Guaranteed Returns's Receipt of Funds from Pharmaceutical Manufacturers ...................................... 2

   B.  The Doctrine of Judicial Estoppel Prevents the Government from Introducing Evidence or Argument That Concealment Money Laundering Took Place at Any Point Prior to Guaranteed Returns's Receipt of Funds from Pharmaceutical Manufacturers ............................................................................ 5

II. THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING ARGUMENT OR TESTIMONY SUGGESTING THAT THE BROTHER-SISTER RELATIONSHIP BETWEEN MR. VOLKES AND MS. FALLON HAS ANY TENDENCY TO PROVE GUILTY KNOWLEDGE OR CRIMINAL INTENT .......... 7

CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*Jefferson v. United States*, 340 F.2d 193 (9th Cir. 1965) .................................................................. 8

*Kotteakos v. United States*, 328 U.S. 750 (1946) ............................................................................. 8

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir. 2003) ................................................................................................................................................ 6

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ............................................................................... 5

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) ................... 7

*United States v. Vastola*, 989 F.2d 1318 (3d. Cir. 1993) ............................................................. 2, 5

**RULES AND CODES**

Federal Rule of Evidence 403 ............................................................................................................ 8

18 U.S.C. § 1956(a) ........................................................................................................................... 1

**OTHER AUTHORITIES**

Model Criminal Jury Instructions, United States Court of Appeals for the Third Circuit,
   Instruction 5.02 ............................................................................................................................. 8

Model Criminal Jury Instructions, United States Court of Appeals for the Third Circuit,
   Instruction 5.03 ............................................................................................................................. 8

Defendants Devos Ltd. d/b/a Guaranteed Returns ("Guaranteed Returns" or the "Company"), Dean Volkes, and Donna Fallon (collectively, "Defendants") submit this memorandum of law in support of their motions *in limine* seeking an order: (I) precluding the government from offering evidence or argument that concealment money laundering took place prior to the distribution of funds from pharmaceutical manufacturers, and (II) precluding the government from offering argument or testimony suggesting that the brother-sister relationship between Mr. Volkes and Ms. Fallon has any tendency to prove guilty knowledge or criminal intent.

I. **THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING EVIDENCE OR ARGUMENT THAT CONCEALMENT MONEY LAUNDERING TOOK PLACE PRIOR TO THE DISTRIBUTION OF FUNDS FROM PHARMACEUTICAL MANUFACTURERS**

Count 54 of the Superseding Indictment charges the defendants with conspiracy to engage in concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). This Count focuses on financial transactions that occurred at the end of the pharmaceutical return/refund process in which Guaranteed Returns collected pharmaceuticals to be returned to manufacturers, received disbursements of refunds from manufacturers in connection with those pharmaceuticals, and transferred those refunds into and through company bank accounts. *See* Superseding Indictment Counts 1 – 23 ¶¶ 9 – 11. Specifically, the government alleges that after Guaranteed Returns received refunds from pharmaceutical manufacturers, the defendants conspired to launder a portion of those refunds by transferring them out of Guaranteed Returns's general operating account through "a series of complex transactions." *Id.* Count 54 ¶ 9.

During briefing and oral argument on the defendants' motion to dismiss Count 54, the government adopted an interpretation of the Superseding Indictment under which it alleges that concealment money laundering occurred only through transactions that took place *after* the

1

disbursement of funds from pharmaceutical manufacturers. United States Response to Defendants' Pretrial Motions at 47, 50 (Docket Entry 132) (hereafter "Government's Response to Defendants' Motion to Dismiss"). The government further represented to the Court and the defendants that, under the money laundering theory of this case, any actions or events that took place prior to such disbursements did not constitute concealment money laundering. *Id.* at 49; Transcript of Oral Argument at 63:8 – 9 (Docket Entry 150).

Having taken the foregoing positions, the government cannot, under the doctrine of judicial estoppel, contradict its construction of the Superseding Indictment at any point during the remainder of this case, including during trial. *See*, *e.g.*, *United States v. Vastola*, 989 F.2d 1318, 1324 (3d. Cir. 1993). Indeed, although we currently have no reason to believe that the government intends to shift its positions at trial, it would be unfair if the government were able to adopt one construction of Count 54 that suited its purposes in opposing the defendants' motion to dismiss the money laundering charge, and then adopted another contradictory interpretation of Count 54 that suited its purposes at trial. Therefore, the defendants request that the Court enter an order precluding the government from offering any evidence or argument that the defendants attempted or intended to conceal the nature, source, location, ownership, or control of any proceeds at any point prior to receiving refund money from pharmaceutical manufacturers.

    **A.**     **During Briefing and Oral Argument on the Defendants' Motion to Dismiss the Money Laundering Count, the Government Unequivocally Stated that Acts Constituting Concealment Took Place Only After Guaranteed Returns's Receipt of Funds from Pharmaceutical Manufacturers**

On March 18, 2016, the defendants moved to dismiss the conspiracy to commit money laundering count alleged in the Superseding Indictment. In this motion, the defendants argued that the Superseding Indictment did not allege a single clear theory of concealment money laundering, but instead appeared to allege two theories, the first of which focused on the so-

2

called act of "bundling" refund requests[1] *before* the disbursement of funds from pharmaceutical manufacturers, and the second of which focused on financial transactions that occurred *after* Guaranteed Returns received refund payments from manufacturers. Defendants' Memorandum of Law in Support of Their Pretrial Motions at 32 (Docket Entry 127) (hereafter "Defendants' Motion to Dismiss"). The defendants further argued that the government's pre-disbursement bundling theory did not make out a charge of money laundering as a matter of law because (1) bundling does not involve a financial transaction, (2) bundling occurs at a step in the pharmaceutical return/refund process at which no refunds or credits – and thus no proceeds – have yet been received, and (3) the government alleged in the Superseding Indictment that Guaranteed Returns grouped together pharmaceutical products that it was returning to manufacturers for efficiency reasons, rather than to conceal. *See* Defendants' Motion to Dismiss at 35 – 42; *see also* Superseding Indictment Count 1 ¶ 10.

In its response to the defendants' motion, the government stated that the Superseding Indictment "alleges a single, valid money laundering theory." Government's Response to Defendants' Motion to Dismiss at 47. The government further clarified that under the allegations contained in the Superseding Indictment, "it is what occurred *after* Defendants received the . . . [disbursed] funds, not what occurred before, that constitutes the gravamen of the money laundering charge." *Id.* at 50 (emphasis in original). The government also explained that, under its theory of the charge, the bundling of returned pharmaceuticals was not part of a conspiracy to engage in concealment money laundering. Indeed, the government explicitly stated in its opposition brief that "[t]he significance of the batching of the drugs is that it led to

---

[1] As described in the indictment, "bundling" refers to the combining together of pharmaceuticals that Guaranteed Returns was returning for a customer's account along with pharmaceuticals that it was returning on its own account. See Superseding Indictment Count 54 ¶ 2.

3

issuance and receipt of commingled funds . . . that Defendants *proceeded* to launder." *Id.* at 49 (emphasis added). The government subsequently reaffirmed this position at oral argument, stating, "[w]hat the government has alleged is *separate than th[e] batching process* of sending actual product in." Oral Arg. Transcript at 63:8 – 9 (emphasis added). The government thus definitively adopted a money laundering theory under which the only transactions that were part of an alleged concealment money laundering conspiracy were those that occurred *after* Guaranteed Returns received refund disbursements from pharmaceutical manufacturers.

On January 10, 2017, the Court relied on the government's construction of the Superseding Indictment and denied the defendants' motion to dismiss. Rejecting the defendants' arguments as "premised upon a misreading of Count 54," the Court accepted the government's position that the methodology of returning pharmaceuticals to manufacturers is not charged as concealment money laundering in the Superseding Indictment. Memorandum Decision at 32 (Docket Entry 171). As the Court wrote in this regard, "it is not the fraudulent and batched submission of drugs that constitutes the underlying crime of money laundering, but rather, Defendants' actions with the proceeds of the fraudulent scheme." *Id.* at 32-33. Further, the Court agreed with the defendants that, as a matter of law, pre-disbursement conduct such as "the batched submission of drugs to the drug manufacturers . . . *cannot satisfy the elements of the crime of conspiracy to conduct concealment money laundering*." *Id.* at 32 (emphasis added). Thus, the Court's rejection of the defendants' motion to dismiss necessarily hinged upon the government's assertion in its briefing, and at oral argument, that the alleged money laundering conspiracy in this case involved only post-disbursement transactions.[2]

---

[2] To be sure, the defendants also argued that the post-disbursement financial transactions could not constitute concealment money laundering as a matter of law. Given that the instant motion *in limine* focuses on the government's abandonment of the theory that pre-disbursement conduct can make out a money laundering

4

### B. The Doctrine of Judicial Estoppel Prevents the Government from Introducing Evidence or Argument That Concealment Money Laundering Took Place at Any Point Prior to Guaranteed Returns's Receipt of Funds from Pharmaceutical Manufacturers

Having adopted a construction of the Superseding Indictment that charges concealment money laundering by virtue of financial transactions that occurred only *after* the receipt of funds from pharmaceutical manufacturers, the government is judicially estopped from taking a contradictory position at trial. Thus, the Court should confirm in a pretrial order that the government may not suggest at trial in any way – whether through testimony, evidence, or argument – that any action or conduct that occurred prior to Guaranteed Returns's receipt of manufacturer refunds reflected the necessary intent to conceal.

"The judicial estoppel doctrine seeks to prevent a party from playing fast and loose with courts by asserting contradictory positions." *Vastola*, 989 F.2d at 1324. When determining whether to apply this doctrine, courts consider (1) whether there is a clear inconsistency between two positions a party seeks to take, (2) whether a court has accepted the party's earlier position, and (3) whether a party would derive an unfair advantage if it is not estopped from asserting the inconsistent position. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Here, all three factors weigh in favor of estopping the government from changing positions.

First, because the government has taken the position that the money laundering charge is based on post-disbursement conduct, a clear inconsistency would exist if the government now claimed that the process by which pharmaceuticals were returned to manufacturers, or any other pre-disbursement conduct, could satisfy the concealment element of money laundering.

---

conspiracy, further discussion of the defendants' post-disbursement arguments will be reserved until the appropriate time.

5

Second, in its denial of the defendants' motion to dismiss, the Court relied upon the government's representations regarding the money laundering conspiracy charge alleged in the Superseding Indictment. Indeed, rather than rejecting defendants' arguments as misstating or misapplying the law, the Court denied the motion based on the government's position that, under the Superseding Indictment, "it is not the fraudulent and batched submission of drugs that constitutes the underlying crime of money laundering, but rather Defendants' actions with the proceeds of the fraudulent scheme." Memorandum Decision at 32 – 33.

Third, the government would gain an unfair advantage (and the defendants would be prejudiced at trial) if the government were permitted to change positions and argue that pre-disbursement conduct satisfied the concealment elements of money laundering. In its opposition to the defendants' motion to dismiss, the government sought to avoid the dismissal of Count 54 by assuring the Court and the defendants that the Superseding Indictment narrowly charged concealment money laundering based on acts occurring only after manufacturers disbursed refund moneys to Guaranteed Returns. And this narrowing of the government's theory is in fact what enabled the government to avoid the dismissal of its money laundering charge; as the defendants argued, and as the Court held, the "batched submission of drugs to the drug manufacturers . . . cannot satisfy the elements of the crime of conspiracy to commit money laundering." Memorandum Decision at 32. Having thus obtained an advantage by narrowing the scope of the charge – and having caused the defendants to rely upon this narrowed theory in their trial preparations – the government may not now seek an unfair advantage by presenting evidence or argument to prove a different theory of concealment money laundering than the one it has already adopted. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) ("[A] party should not be allowed to gain an advantage in

6

litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.") (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996)).

For the foregoing reasons, the defendants respectfully request that the Court issue an order that precludes the government from attempting to establish the concealment element of money laundering through anything other than transactions that took place *after* manufacturer refunds were received by Guaranteed Returns.

**II.     THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING ARGUMENT OR TESTIMONY SUGGESTING THAT THE BROTHER-SISTER RELATIONSHIP BETWEEN MR. VOLKES AND MS. FALLON HAS ANY TENDENCY TO PROVE GUILTY KNOWLEDGE OR CRIMINAL INTENT**

As the Court is likely aware, Dean Volkes and Donna Fallon are brother and sister. Since this relationship is a basic element of the facts underlying this case, the defendants recognize that Mr. Volkes and Ms. Fallon's sibling relationship is likely to be elicited at trial and come into the awareness of the jury. The fact of a sibling relationship, however, is not relevant to proving whether a defendant possesses guilty knowledge or criminal intent, and therefore the Court should preclude the government from offering argument or soliciting testimony suggesting otherwise.

As a matter of logic and common sense, the mere fact that two people are siblings proves nothing about their respective knowledge or intent. Siblings – like any other two individuals in the world – may or may not choose to share information with each other for countless reasons, and an individual's acquisition of knowledge turns on what he or she hears, sees, and experiences, not to whom he or she is related. Similarly, merely because two siblings work in the same company and are co-defendants accused in the same indictment does not mean that they shared a common intent, let alone that one sibling would necessarily be more willing than an

7

unrelated individual to participate in allegedly illegal conduct.  Third Circuit Model Jury Instructions 5.02 and 5.03 confirm these basic truisms in their delineation of the evidence that is relevant to a jury's conclusions about a defendant's mental state, instructing as follows:

> Model Jury Instruction 5.02:  In deciding whether (name) acted "knowingly" ["with knowledge"], you may consider evidence about what (name) said, what (name) did and failed to do, how (name) acted, and all the other facts and circumstances shown by the evidence that may prove what was in (name)'s mind at that time.
>
> Model Jury Instruction 5.03:  In deciding whether (name) acted "intentionally" ["with intent"],  you may consider evidence about what (name) said, what (name) did and failed to do, how (name) acted, and all the other facts and circumstances shown by the evidence that may prove what was in (name)'s mind at that time.

Mod. Crim. Jury Instr. 3rd Cir. 5.02, 5.03.

As these instructions make clear, the mere existence of a sibling relationship does not "prove what was in [a person's] mind" at any given time, and therefore, the fact that Mr. Volkes and Ms. Fallon are brother and sister is not probative of their knowledge or intent.  Any argument to the contrary – and indeed any attempt to prove guilt based on the sibling relationship – would reflect an improper effort to transfer one defendant's culpability to another, contravening the basic principle that each defendant's responsibility must be separately considered.  *See Kotteakos v. United States*, 328 U.S. 750, 772 (1946) ("Guilt with us remains individual and personal[.]"); *Jefferson v. United States*, 340 F.2d 193, 197 (9th Cir. 1965) (it is improper to impute knowledge from one co-conspirator to another).

Thus, the Court should bar the government from offering argument or testimony that in any way suggests that a sibling relationship is probative of guilty knowledge or criminal intent, because any such argument or testimony is legally erroneous and excludable due to the danger of "confusing the issues . . . [and] misleading the jury."  Fed. R. Evid. 403.

**CONCLUSION**

For the forgoing reasons, defendants respectfully move this Court for an order: (I) precluding the government from offering evidence or argument that concealment money laundering took place prior to the distribution of funds from pharmaceutical manufacturers, and (II) precluding the government from offering argument or testimony suggesting that the brother-sister relationship between Mr. Volkes and Ms. Fallon is probative of guilty knowledge or criminal intent.

Dated: New York, New York
       January 18, 2017

Respectfully Submitted,

**SCHLAM STONE & DOLAN LLP**

By: /s/ Douglas E. Grover
Douglas E. Grover
Thomas A. Kissane

26 Broadway
New York, New York 10004
Tel. 212.344.5400
Fax 212.344.7677
dgrover@schlamstone.com
tkissane@schlamstone.com

**LAW OFFICES OF ANN C. FLANNERY, LLC**

By: /s/ Ann C. Flannery
Ann C. Flannery

1835 Market Street, Suite 2700
Philadelphia, Pennsylvania 19103
Tel. 215.636.9002
Fax 215.636.9899
acf@annflannerylaw.com

*Attorneys for Defendant Devos Ltd. d/b/a Guaranteed Returns*

9

**MORVILLO ABRAMOWITZ**
**GRAND IASON & ANELLO P.C.**

By: /s/ Elkan Abramowitz
Elkan Abramowitz
Robert M. Radick
Miriam L. Glaser
Ashley C. Burns
Christopher D. Brumwell

565 Fifth Avenue
New York, New York 10017
Tel. 212.856.9600
Fax. 212.856.9494
eabramowitz@maglaw.com
rradick@maglaw.com
mglaser@maglaw.com
aburns@maglaw.com
cbrumwell@maglaw.com

*Attorneys for Defendant Dean Volkes*

**PROSKAUER ROSE LLP**

By: /s/ Robert J. Cleary
Robert J. Cleary
William C. Komaroff

11 Times Square
New York, New York 10036
Tel.  212.969.3000
Fax  212.969.2900
rjcleary@proskauer.com
wkomaroff@proskauer.com

*Attorneys for Defendant Donna Fallon*