# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 14-574** |
| **DEVOS LTD. D/B/A GUARANTEED RETURNS** | : | |
| **DEAN VOLKES** | | |
| **DONNA FALLON** | : | |

## <u>ORDER</u>

AND NOW, this ___ day of _____ 2017, for the reasons set forth in the

Government's Motion *In Limine* to Admit Evidence, and upon consideration of any opposition

thereto, it is hereby

ORDERED

that the government's motion is GRANTED for the reasons stated in the Government's

memorandum of law.


BY THE COURT:


_____
HONORABLE PETRESE B. TUCKER
*Chief Judge, United States District Court*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 14-574** |
| **DEVOS LTD. D/B/A GUARANTEED RETURNS** | : | |
| **DEAN VOLKES** | | |
| **DONNA FALLON** | : | |

<u>**GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE**</u>

The United States of America, by its attorneys, Louis D. Lappen, Acting United States Attorney for the Eastern District of Pennsylvania, and Patrick J. Murray and Nancy Rue, Assistant United States Attorneys, hereby files its Motion *in Limine* to Admit Evidence.

WHEREFORE, for the reasons stated in the accompanying memorandum of law, which is incorporated here by reference, the United States of America respectfully requests that the government's motion be granted and the Court enter an order that the testimony at issue may be admitted at trial, either as intrinsic evidence of the crimes charged or under Federal Rule of Criminal Procedure 404(b), with appropriate limiting instructions.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


 */s/ Patrick J. Murray*
PARICK J. MURRAY
NANCY RUE
Assistant United States Attorneys

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 14-574** |
| DEVOS LTD. D/B/A GUARANTEED RETURNS | : | |
| DEAN VOLKES | | |
| DONNA FALLON | : | |

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION IN LIMINE TO ADMIT EVIDENCE**

  The government has moved *in limine* to admit evidence of certain conduct by the defendants.   Specifically, the government seeks to admit into evidence of the allegations set forth in the Superseding Indictment and evidence of similar conduct that precedes the periods alleged in the indictment.

**I.  THE CHARGED CONDUCT**

  On October 24, 2014, a federal grand jury returned an indictment charging Devos, Ltd. d/b/a Guaranteed Returns, Dean Volkes, and Donna Fallon with wire fraud, mail fraud, attempt to commit mail or wire fraud, theft of government funds, conspiracy to launder money, conspiracy to obstruct justice, obstruction of justice, and making false statements, in violation of Title 18, United States Code, Sections 1343, 1341, 1349, 641, 1956(h), 371, 1512(c)(1), 1519, and 1001, respectively.   On February 11, 2016, a federal grand jury returned a superseding indictment against these defendants, charging the same crimes but adding additional counts and factual allegations (the "indictment").

  From at least 1999 through at least 2014, Guaranteed Returns managed the returns of pharmaceutical products for healthcare providers, including numerous hospitals, pharmacies, and long-term care facilities, including those operated by the United States Department of

Defense and the United States Department of Veterans Affairs.   Dean Volkes was the owner and Chief Executive Officer of Guaranteed Returns, and Donna Fallon was the company's Chief Financial Officer.   Defendants Volkes and Fallon are siblings.

Pharmaceutical manufacturers often allow expired drugs to be returned for a refund.   Guaranteed Returns was in the business of handling this process for healthcare provider clients in exchange for a fee based on a percentage of the return value.

The indictment charges that Guaranteed Returns promised its clients that it would hold their "indate" (not yet returnable) drug products until they became returnable and then return them on their clients' behalf, in exchange for a fee.   Instead, according to the indictment, Guaranteed Returns, at CEO Dean Volkes' direction, stole "indate" drug products that it received from its clients, returned the drugs to manufacturers, and kept the refund money.   The indictment also charges that Guaranteed Returns stole a portion of clients' refund money by diverting a percentage of the refund money into internal Guaranteed Returns accounts via a computerized accounting adjustment.   The indictment alleges that through fraud, Guaranteed Returns stole more than $180 million from its clients, including more than $25 million from just four agencies:   the Department of Defense, the Department of Veterans Affairs, the District of Columbia Department of Health, and the Federal Bureau of Prisons.   The indictment charges further that the defendants conspired to launder the funds that they obtained from stealing and returning the "indate" drugs and the stolen refund moneys in order to conceal or disguise the nature of the scheme.

Counts 1 through 40 allege that defendants Guaranteed Returns and Volkes participated in this indate scheme from at least 1999 through at least October 2014.   Doc. 120 at

1-21.   Counts 41 through 52 allege that defendant Fallon participated in the scheme from at least October 2010 through October 2014.   Id. at 22 (incorporating paragraphs from Counts 1-40), 24. As part of these allegations about the indate scheme, the indictment alleges that from 1999 through at least October 2014, defendants Guaranteed Returns and Volkes participated in the following stratagems related to their indate scheme:   the unmanaged client stratagem, the G-13 stratagem, and the 3-year cutoff stratagem.   Id. at 9-12.   Furthermore, the indictment alleges that Fallon participated in these activities from at least October 2010 through October 2014.   Id. at 22 (incorporating paragraphs from Counts 1-40), 24.

Counts 41 through 52 allege several additional fraudulent aspects to the defendants' scheme.   Specifically, these counts allege that from at least October 2010 through October 2014, the defendants, including Fallon, engaged in the following activities:

- The defendants used various means to increase the company's revenues in ways that were hidden from its clients, including the indate stratagems set forth in Counts 1 through 40, "as well as additional stratagems that were not specific to 'indate' products."   Id. at 22.

- Despite informing healthcare provider clients that Guaranteed Returns' negotiated fee was "all inclusive," the defendants charged clients additional hidden fees.   Id.

- From Fall 2010 through April 2011, the defendants implemented an "adjustment" scheme whereby they adjusted downward the amount of refunds from manufacturers that were distributed to clients by diverting a portion of the funds to the company.   Id. at 22-24.

3

The indictment also charges Guaranteed Returns and Volkes with theft of government funds, in violation of 18 U.S.C. § 641.   Specifically, Count 53 alleges that from January 2001 through October 2014, these defendants stole at least $27 million worth of pharmaceutical products that were entrusted to Guaranteed Returns to return for refund by the U.S. Department of Defense, the Veterans Administration, the District of Columbia Department of Health, and the Federal Bureau of Prisons.   Id. at 26.

Furthermore, the indictment charges all three defendants with engaging in a money laundering conspiracy to conduct financial transactions designed in part to conceal or disguise the nature, location, source, ownership, and controls of the proceeds of unlawful activity from 1999 to October 2014.   Id. Ct. 54 at 27-30.   It also charges that the defendants obstructed justice and made false statements by withholding and destroying records that were subject to a grand jury subpoena, and lying to federal investigators.   Id. Cts. 55-65 at 31-48.   Finally, the indictment includes two notices of forfeiture.   Id. at 49-51.

## II.   <u>THE UNCHARGED CONDUCT</u>

Although most of the conduct at issue in this motion is explicitly charged in the indictment, there are several discrete types or periods that were not explicitly alleged.   These consist of the following:

- Counts 41 through 52 allege that in addition to the indate stratagems alleged in Counts 1 through 40, from October 2010 through October 2014 the defendants engaged in additional stratagems not specific to "indate products," charged hidden fees, and engaged in an adjustment program.

Not explicitly charged, however, is the defendants' participation in this activity before October 2010.   Id. at 24-25.

- Similarly, Defendant Fallon is charged with participating in the indate scheme from October 2010 through October 2014, but she is not explicitly charged with engaging in this conduct before October 2010.   Id.

Furthermore, the government anticipates that witnesses may testify that the defendants' marketing message promised clients that Guaranteed Returns' fees were as based upon Actual Return Value (ARV), when they were actually based upon Estimate Return Value (ERV).

## II.    ARGUMENT

The vast majority of the evidence subject to this motion is admissible because it is intrinsic to the charged offenses and, thus, not subject to a Federal Rule of Evidence 404(b) analysis.   Moreover, even were the Court to analyze this evidence under Rule 404(b), it is admissible to prove intent, knowledge, motive, plan, and lack of mistake or accident.   Similarly, the remaining evidence subject to this motion is also admissible under Rule 404(b) to prove intent, knowledge, motive, plan, and lack of mistake or accident.

### A.    Most of the Evidence Is Intrinsic to the Offenses

Rule 404(b) applies to evidence of wrongful acts that are "extrinsic" to the charged offense.   Evidence that is "intrinsic" does not fall within the rule.   See United States v. Green, 617 F.3d 233, 245 (3d Cir. 2010).

In Green, the Court has explained that there are two categories of intrinsic evidence.   Id. at 248.   "First, evidence is intrinsic if it 'directly proves' the charged offense." Id. (citations omitted).   "Second, 'uncharged acts performed contemporaneously with the

charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'"

Id. at 249 (quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000)).   "[A]ll else

must be analyzed under Rule 404(b)."   Green, 617 F.3d at 249.

Rule 404(b) does not apply to an act that is part of the charged crime.   United

States v. Blyden, 964 F.2d 1375, 1378 (3d Cir. 1992) (where the challenged testimony relates to

an act that is part of the charged crime, Rule 404(b) is not implicated because "[t]he evidence is

focused on the crime at issue in the case being tried.").   Thus, "[e]ven if the evidence is

extremely prejudicial to the defendant, the court would have no discretion to exclude it because it

is proof of the ultimate issue in the case."   United States v. Hoffecker, 530 F.3d 137, 189 (3d

Cir. 2008) (citations and internal quotations omitted); see also 2 Jack B. Weinstein & Margaret

A. Berger, Weinstein's Evidence, ¶ 404[10], at 404-77 (1991) ("Rule 404(b) presupposes the

existence of other crimes.").

As explained above, Counts 1 through 40 of the Superseding Indictment charge

defendants Guaranteed Returns and Dean Volkes with wire fraud and mail fraud.   In connection

with these charges, the indictment alleges that defendants Guaranteed Returns and Dean Volkes

engaged in various types of fraudulent activity from approximately 1999 through October 2014.

Id. at 1-21.   This charged fraudulent activity includes the following:

- Participation in the indate scheme.   Id. at 5-9.

- Participation in the unmanaged client stratagem.   Id. at 9-10.

- Participation in the G-13 stratagem.   Id. at 10-11.

- Participation in the 3-year cutoff stratagem.   Id. at 11-12.

6

Evidence proving this fraudulent conduct by Guaranteed Returns and Dean Volkes proves the allegations in the Superseding Indictment and, thus, is clearly intrinsic.   Accordingly, it is not uncharged conduct and need not be subject to analysis under Rule 404(b).

      Counts 41 through 52 charge Defendants Guaranteed Returns, Dean Volkes, and Donna Fallon with mail fraud.   As with Counts 1 through 40, these counts allege that Defendants Guaranteed Returns, Dean Volkes, and Donna Fallon engaged in various types of fraudulent activity from at least October 2010 through October 2014.   Id. at 22-25.   This charged fraudulent activity includes the following:

- Participation in the indate scheme and the indate stratagems.   Id. at 22.

- Participation in "additional stratagems that were not specific to 'indate' products."   Id.

- Charging clients hidden fees, despite informing healthcare provider clients that Guaranteed Returns' negotiated fee was "all inclusive."   Id.

- Implementing the adjustment scheme.   Id. at 22-24.

Consequently, evidence of this fraudulent conduct by all three defendants during the period from approximately 2010 to October 2014 is intrinsic.   As such, it need not be subjected to a Rule 404(b) analysis.

      Finally, evidence of the conduct alleged in Counts 41 through 52 that precedes October 2010 is also intrinsic evidence.   The charging paragraph for these counts specifies the period from approximately October 2010 through October 2014, but most of the other

paragraphs do not limit the timeframe of the allegations.   Id. at 22-25.[1]   Moreover, paragraph 1 of Counts 41 through 52 incorporates paragraphs from Counts 1 through 23 that describe conduct that precedes October 2014.   Id. at 22.   Accordingly, to the extent that the fraudulent activity described in Counts 41 through 52 started before October 2010, this fraudulent activity has been alleged and is intrinsic to these counts.   As such, this evidence is intrinsic to the charged offenses and is clearly not subject to Rule 404(b).

B.     **Even if Any of the Proffered Evidence is Extrinsic,
        It Is Admissible Pursuant to Rule 404(b)**

Any proposed evidence that is considered extrinsic is admissible under Federal Rule of Evidence 404(b) because it is relevant, its admission is being sought for a proper purpose, its probative value outweighs its potential prejudice, and a limiting instruction can cure any unfair prejudice.

1.     **Relevance**

First, any proffered evidence that the Court deems extrinsic is highly relevant. As a general rule, all relevant evidence is admissible.   Fed. R. Evid. 401.   Evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable. Relevance under Rule 401 is not a competition between possible explanations of the evidence's significance.   A reasonable explanation of how the evidence makes a fact of consequence more or less likely resolves the relevance issue.   The fact that a party contesting admissibility can supply an alternate explanation of the evidence that disconnects it from the fact of consequence is not significant under Rule 401.   See McQueeney v. Wilmington Trust Co., 779 F.2d 916, 921

---

[1] Paragraph 11 of Counts 41 through 52 does specify that defendant Donna Fallon repeatedly took a particular step in the adjustment scheme from Fall 2010 through April 2011.   Id. at 23.

(3d Cir. 1985) ("evidence need not lead inescapably towards a single conclusion to be relevant, it need only make certain facts more probable than not."). Resolving conflicting explanations of evidence is for the jury. See DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1202 (3d Cir. 1978) (alternate explanations go to weight, not admissibility). An alternative explanation of the evidence is not germane to the relevance determination under Rule 401, and a fact of consequence is not limited to the ultimate issue in a case, such as one of the defined essential elements of a crime. Instead, a fact of consequence can be any step along a path of inference that leads to an "ultimate fact." Old Chief v. United States, 519 U.S. 172, 179, 184 (1997).

Facts of consequence also include reasonably anticipated defenses. Evidence that makes a fact of consequence to a defense less likely is relevant evidence in the government's case. See United States v. Kemp, 500 F.3d 257, 296-97 (3d Cir. 2007) (evidence disproving defendant's claims of wealth was relevant; defendant sought to negate his motive to launder money by claiming great wealth). "Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense." United States v. Curtin, 489 F.3d 935, 940 (9th Cir. 2007) (defendant accused of soliciting sex from a minor; government may impeach defendant's expected defense that he believed the minor was an adult posing as a young teenager).

Here, to the extent that the Court concludes that the allegations in Counts 41 through 52 are limited to the period from October 2010 through October 2014, the same or similar conduct preceding October 2010 is clearly relevant to whether the fraudulent conduct continued after October 2010. For instance, the extent that the defendants were charging clients

hidden fees before October 2010 is highly probative on the issue of whether they were charging

clients hidden fees after October 2010.

       The proffered evidence is also necessary to rebut the defendants' defenses.

Based on the defendants' pretrial motions, it appears that they will argue that either they were in

fact entitled to promise to return customers' indates for the customer while actually retaining the

proceeds for themselves, or that they mistakenly believed that they had the right to do this. The

defendants' participation in other false representations about the nature of their service and fees

is probative of the defendants' intent, knowledge, motive, plan, and lack of mistake or accident,

which, as set forth below, are each permissible purposes under Rule 404(b).

     **2.**     **Rule 404(b) Considerations**

       A party may move to admit evidence of prior bad acts pursuant to Rule 404(b),

which provides:

> Evidence of a crime, wrong, or other act is not admissible to prove
> a person's character in order to show that on a particular occasion
> the person acted in accordance with the character . . . .   This
> evidence may be admissible for another purpose, such as proving
> motive, opportunity, intent, preparation, plan, knowledge, identity,
> or absence of mistake, or lack of accident . . . .

Rule 404(b) evidence is proper "if relevant for any other purpose than to show a mere propensity

or disposition on the part of the defendant to commit the crime."   United States v. Bergrin, 682

F.3d 261, 278 (3d Cir. 2012) (quoting United States v. Johnson, 199 F.3d 123, 128 (3d Cir.

1999) (citation and internal quotation marks omitted)).   Here, the proposed evidence will be

tendered for distinctly non-propensity purposes; it will be offered to provide essential

background information and to show that the defendants' intent, knowledge, motive, plan, and

lack of mistake or accident.

The U.S. Supreme Court adopted the following analysis for evaluating and admitting Rule 404(b) evidence: the evidence should be admitted (i) if it is offered for a proper purpose; (ii) if it is relevant; (iii) if the evidence's probative value is not substantially outweighed by its unfair prejudice; and (iv) if the court properly instructs the jury that it should consider the evidence only for the proper purpose for which it was admitted.   See Huddleston v. United States, 485 U.S. 681, 691-92 (1988); see also United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003).

### a.      Proper Purpose

Proper evidentiary purposes for past crimes evidence includes: (1) the defendant's motive; (2) intent and knowledge; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) to establish identity.   United States v. Green, 617 F.3d 233 at 242 (3d Cir. 2010).   However, past crimes are also admissible for reasons not specifically enumerated in Rule 404(b), including those necessary to "complete the story," to provide proper background information without which the trial would not make sense, or to supply a jury with "helpful background" information needed to fully understand the events charged in the indictment.   Id. at 250 (evidence of threat to kill police officer in drug case supplied "helpful background information to the finder of fact" and was permitted under Rule 404(b)); United States v. Simmons, 679 F.2d 1042, 1050 (3d Cir. 1982) (prior check forging admissible under Rule 404(b) "to provide necessary background information"); United States v. Taylor, 522 F.3d 731, 735-36 (7th Cir. 2008) (it is proper under Rule 404(b) to admit evidence in order to "avoid confusing the jury"); United States v. Middleton, 246 F.3d 825, 836 (6th Cir. 2001) (defendant's

11

previously filed tax returns ruled admissible to establish the defendant's knowledge of his legal duty to pay taxes); United States v. Lashmett, 965 F.2d 179, 184-85 (7th Cir. 1992) (defendant's incarceration established his motive to recruit others in the fraud scheme, and "filled a chronological gap in the case" by explaining his physical absence during the period of incarceration).   As held in Green, "allowing the jury to understand the circumstances surrounding the charged crime---completing the story---is a proper, non-propensity purpose under Rule 404(b)."   617 F.3d at 247.

As noted above, the proffered evidence---evidence of the same or similar conduct that preceded October 2010---is admissible to provide the jury with "helpful background" information needed to fully understand the events charged in the Indictment.   Green, 617 F.3d at 250.   For instance, this evidence will show that the fraudulent conduct alleged in Counts 41 through 52 did not start out of thin air in October 2010.   Rather this conduct, at least with respect to charging hidden fees, and for Defendant Fallon, the indate scheme, began before October 2010.   Such background evidence will be critical to understanding the roles of the defendants in this case.

The evidence also shows also shows the relationship between the parties.   The Third Circuit has held that evidence may be introduced "to provide necessary background information, to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirators role in the scheme."   United States v. Butch, 256 F.3d 171, 176 (3d Cir. 2001) (district court did not abuse its discretion when it admitted evidence of prior thefts committed jointly by individuals who later joined in a theft conspiracy); see United States v. O'Leary, 739 F.2d 135 (3d Cir. 1984).   In connection with Counts 1 through 40,

12

the jury will be hearing Defendants Guaranteed Returns and Dean Volkes' roles in the indate scheme and its stratagems from 1999 through 2014.   Evidence regarding their relationship with Defendant Fallon with respect to these schemes will merely help the jury understand her role in the scheme.

Furthermore, this background evidence is important to demonstrating that the defendants acted knowingly and intentionally, and not by accident or mistake.   For example, the admission of evidence that a defendant had engaged in prior thefts to show intent was not an abuse of discretion when the defendant denied that he had intentionally participated in a scheme. Butch, 256 F.3d at 177 n.5.   Similarly, the Third Circuit found that evidence was offered for a proper purpose and not to show mere propensity to commit a crime in a case a defendant's prior "familiarity with the subterfuge and concealment inherent in drug-trafficking was relevant to the issue of whether [the defendant] may have believed the bag contained contraband other than cocaine." United States v Boone, 279 F.3d 163 (3d Cir. 2002).

Thus, the evidence of the defendants' participation in earlier fraudulent activity satisfies Rule 404(b)'s requirements.

### b.    Relevance

For the reasons explained in the Relevance section above, this evidence is relevant to the crimes charged.   In particular, the evidence will prove that the defendants intended to mislead their customers, and that their actions were not the result of mistake.

### c.    The Probative Value of the Proffered Evidence Is Not Substantially Outweighed by its Potential for Unfair Prejudice

Federal Rule of Evidence 403 permits a district court to exclude relevant evidence only if the evidence's probative value is substantially outweighed by the danger of unfair

13

prejudice.   Fed. R. Evid. 403 (emphasis added).   "Unfair prejudice" refers to an undue tendency to suggest a decision on an improper basis.   See Fed. R. Evid. 403, Advisory Committee Notes.

Rule 403 does not entail a simple "balancing."   The rule makes clear that exclusion is allowed only if the prejudicial impact "substantially outweighs" the probative value. In part, this means that the test is almost surely not met where the probative value of the evidence is itself high.   The remedy is "extraordinary" and should be applied sparingly; the balance should be struck in favor of admissibility.   United States v. Terzado-Madruga, 897 F.2d 1099, 1117 (11th Cir. 1990).   Accord United States v. Dennis, 625 F.2d 782, 797 (8th Cir. 1980); United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978).

Moreover, in speaking of "prejudice," the rule is not asking simply whether the evidence is harmful to the defendant's case:

> [Rule 403] does not offer protection against evidence that is merely
> prejudicial, in the sense of being detrimental to a party's case.
> Rather, the rule only protects against evidence that is *unfairly*
> prejudicial.   Evidence is unfairly prejudicial only if it has "an
> undue tendency to suggest decision on an improper basis,
> commonly, though not necessarily, an emotional one."   Advisory
> Committee's Note, F.R.Evid. 403.

Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980).   "[T]he prejudice against which [Rule 403] guards is unfair prejudice---prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found.'"   United States v. Starnes, 583 F.3d 196, 215 (3d Cir. 2009) (quoting Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 670 (3d Cir. 2002) (emphasis in original)).   "Virtually all evidence is prejudicial or it isn't material."   Carter, 617 F.2d at 972 n.14 (quoting Dollar v. Long Manufacturing Co., 561 F.2d 613, 618 (5th Cir. 1977)); United States v. Cross, 308 F.3d 308,

14

323 (3d Cir. 2002) ("[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable.").   As the Third Circuit noted in <u>Cross</u>, "Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury.   It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone."   308 F.3d at 325 (quoting <u>United States v. Gartmon</u>, 146 F.3d 1015, 1021 (D.C. Cir. 1998)).

Further, any prejudice may be ameliorated through a jury instruction which, as the Third Circuit has stated, minimizes any potential for unfair prejudice and ensures that the jury does not consider the evidence for an improper purpose.   <u>See, e.g.</u>, <u>United States v. Lee</u>, 612 F.3d 170, 191 (3d Cir. 2010); <u>United States v. Sriyuth</u>, 98 F.3d 739, 748 (3d Cir. 1996).   Finally, it may be observed that the Third Circuit has allowed the admission under Rule 404(b) even of information which in all likelihood was far more prejudicial than that involved in the current case at issue.   For example, in <u>Green</u> the defendant was charged with attempted possession of a kilogram of cocaine with intent to distribute.   The Third Circuit held that a district court did not abuse its discretion in admitting evidence regarding the defendant's efforts to acquire dynamite in order to kill an undercover officer involved in an earlier case, because the evidence helped explain the conversations between the defendant and a cooperator, and to explain the cooperator's motives in assisting law enforcement.   The Court added:   "We note that we have rejected Rule 403 challenges to the admission of evidence that was just as prejudicial as the evidence at issue here.   <u>See, e.g.</u>, [<u>United States v.</u>] <u>Scarfo</u>, 850 F.2d [1015,] 1020 [(3d Cir. 1988)] (evidence of uncharged murders); <u>United States v. Sriyuth</u>, 98 F.3d 739, 748 (3d Cir.1996) (evidence of uncharged rape)."   <u>Green</u>, 617 F.3d at 252; <u>see also</u> <u>Bronshtein v. Horn</u>,

15

404 F.3d 700, 730-31 (3d Cir. 2005) (under a state rule akin to Fed. R. Evid. 404(b), the trial court permissibly allowed evidence of participation in another murder to prove the identity of the killer in the charged murder); United States v. Daraio, 445 F.3d 253, 264-66 (3d Cir. 2006) (evidence of defendant's uncharged tax evasion was relevant to show defendant's intent in failing to pay over payroll taxes).

In this case, any prejudice, let alone unfair prejudice, does not substantially outweigh the highly probative value of the evidence.   This is particularly true since the potential evidence to be admitted under Rule 404(b) is very similar to the charged conduct.   Furthermore, any risk that the jury will impermissibly consider the evidence as proof of the defendant's propensity to commit crimes can be mitigated by the Court's limiting instruction to the jury. Green, 617 F.3d at 252.   The government has included below a proposed limiting instruction concerning the purposes for which the evidence may be used.   Thus, all prongs for admission under Rule 404(b) have been met.

### d.    Limiting Instruction

At the time the proposed evidence is introduced, and at the conclusion of the case, the Court can provide a limiting instruction to the jury.   The Third Circuit's Model Jury Instruction 4.29, Defendant's Prior Bad Acts or Crimes (F.R.E. 404(b)), provides the basis for the following proposed instruction:

You have heard testimony that the defendant _____, before the dates charged in the indictment.

16

This evidence of other acts was admitted only for limited purposes.   You may consider this evidence only for the purpose of deciding whether the defendant had the knowledge or intent necessary to commit the crimes charged in the indictment.

Do not consider this evidence for any other purpose.

Of course, it is for you to determine whether you believe this evidence and, if you do believe it, whether you accept it for the purpose offered.   You may give it such weight as you feel it deserves, but only for the limited purpose that I described to you.

The defendant is not on trial for committing these other acts.   You may not consider the evidence of these other acts as a substitute for proof that the defendant committed the crime charged.   You may not consider this evidence as proof that the defendant has a bad character or any propensity to commit crimes.   Specifically, you may not use this evidence to conclude that because the defendant may have committed the other acts, he must also have committed the offenses charged in the indictment.

Remember that the defendant is on trial here only for the offenses charged in the indictment, not for these other acts.   Do not return a guilty verdict unless the government proves the crimes charged in the indictment beyond a reasonable doubt.

Such a limiting instruction will address any potential for unfair prejudice and ensure that the jury does not consider the evidence for an improper purpose.   See United States v. Givan, 320 F.3d 452, 462 (3d Cir. 2003) ("it is a basic tenet of our jurisprudence that a jury is presumed to have followed the instructions the court gave it . . .   If we preclude the use of evidence admissible under Rule 404(b) because of a concern that jurors will not be able to follow the court's instructions regarding its use we will inevitably severely limit the scope of evidence

17

permitted by that important rule."); <u>Sriyuth</u>, 98 F.3d at 748; <u>United States v. Sampson</u>, 980 F.2d 883, 886 (3d Cir. 1992).

III.  <u>**CONCLUSION**</u>

        For all of the foregoing reasons, the government respectfully requests that the government's Motion *In Limine* be granted and the Court enter the attached order admitting the evidence described.

        Respectfully submitted,

        LOUIS D. LAPPEN
        Acting United States Attorney

        */s/ Patrick J. Murray*
        PATRICK J. MURRAY
        NANCY RUE
        Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Motion *in Limine* to Admit Evidence has been served by me this date, by electronic court filing, upon all counsel of record.


*/s/ Patrick J. Murray*
PATRICK J. MURRAY
Assistant United States Attorney


Date: January 18, 2017