# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIM. NO. 14-574 (PBT)** |
| **DEVOS LTD. d/b/a GUARANTEED RETURNS** | : | |
| **DEAN VOLKES** | | |
| **DONNA FALLON** | : | |

## O R D E R

AND NOW, this _____ day of _____, 2017, upon consideration of the United States' Opposition to Defendants' Motion to Exclude Tape-Recorded Telephone Conversations, for the reasons set forth in the United States' accompanying Memorandum of Law, **IT IS HEREBY ORDERED AND DECREED** that the Motion is **DENIED**.

BY THE COURT:

_____
**PETRESE B. TUCKER**
**Chief United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIM. NO. 14-574 (PBT)** |
| DEVOS LTD. d/b/a GUARANTEED RETURNS | : | |
| DEAN VOLKES | | |
| DONNA FALLON | : | |

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE**
**TAPE-RECORDED TELEPHONE CONVERSATIONS**

COMES NOW, the United States of America, by its counsel, Louis D. Lappen, Acting United States Attorney for the Eastern District of Pennsylvania, and Patrick J. Murray and Nancy Rue, Assistant United States Attorney for the District, and files this Response to the Defendants' Motion to Exclude Recorded Phone Conversations (No. 198), and in support of the Response, states as follows:

## INTRODUCTION

The three defendants, Guaranteed Returns, its president and CEO, Dean Volkes, and its CFO, Donna Fallon, seek to exclude three tape-recorded telephone conversations between two Guaranteed Returns personnel (Sharon Curley and Daniel Gingrich), which took place in 2012. At the time that he made the tape recordings, Daniel Gingrich was a member of defendant Guaranteed Returns' outside sales force and Sharon Curley was a senior Guaranteed Returns employee and the head of reconciliation. Def. Br. 2. The evidence will show that Daniel Gingrich made the recordings on his own, without any direction from the government; indeed, the government did not learn of the recordings until Gingrich was interviewed in May 2012. In the recordings, Ms. Curley tells Gingrich that the fee Guaranteed Returns tells its clients that it

charges is lower than the fee that the company really charges and he thanks her for being honest with him about the company's practices.

In their motion, defendants claim that the contents of the recorded conversations are (i) other acts evidence under Rule 404(b) of the Federal Rules of Evidence, that is unrelated to any charged conduct and (ii) confusing and prejudicial.  These arguments fail because the recorded conversations are (1) not 404(b) evidence but instead direct proof of the mail fraud offenses charged in Counts 41 through 52 of the Superseding Indictment ("the indictment"), concerning the adjustment scheme; and (2) neither confusing nor unduly prejudicial, but instead probative of the adjustment scheme, charged in Counts 41 through 52.  Defendants' motion to exclude the recordings should, therefore, be denied.

The motion seeks additional relief: the individual defendants argue that, should the Court determine that Ms. Curley's statements in the recordings are admissible against defendant Guaranteed Returns as the admissions of a party opponent, under Rule 801(d)(2)(D), F.R.E., then they seek a severance from the corporate defendant.  The individual defendants maintain that severance is warranted under Rule 14 of the Federal Rules of Criminal Procedure because Ms. Curley's statements are inadmissible hearsay as to them, and moreover testimonial hearsay, admission of which would violate their right to confront Ms. Curley under the Confrontation Clause and *Crawford v. Washington*, 541 U.S. 36, 50 (2004).  Such prejudice, defendants claim, stems from their inability to cross-examine Ms. Curley, whom the government does not intend to call as a witness. This argument also fails.  First, the individual defendants misapprehend the basis on which the United States offers the recordings into evidence. While it is correct that the government seeks to admit Ms. Curley's statements against the corporate defendant as the admissions of a party opponent under Rule 801(d)(2)(D), her statements are

admissible against the individual defendants as well, as statements of a co-conspirator made during and in furtherance of the conspiracy under Rule 801(d)(2)(E).  In addition, as defendants all but concede, Def. Br. 12, due to her position Ms. Curley was the agent of the corporate defendant, which is charged in Counts 41 through 52 of the indictment with plotting with the individual defendants to commit mail fraud in connection with the adjustment scheme.  The corporate entity acted through her and is bound by her actions.  Accordingly, both directly, and through the corporate defendant, to whom her words are attributable, Ms. Curley's statements are admissible against the individual defendants, as co-conspirator statements in furtherance of that conspiracy. Under Rule 801(d)(2)(E), her statements are not hearsay and should be admitted against all three defendants. And under *Crawford* and the Third Circuit cases interpreting *Crawford*, these statements are nontestimonial hearsay. Because there is no Confrontation Clause issue, there is no basis for severance. The individual defendants' alternative motion for severance should be denied.

## **<u>ARGUMENT</u>**

### I.   **THE RECORDINGS DIRECTLY PROVE THE CRIMINAL CONDUCT ALLEGED IN COUNTS 41 THROUGH 52 OF THE INDICTMENT AND ARE, THEREFORE, NOT RULE 404(b) EVIDENCE.**

Defendants first move to exclude the recorded conversations based on the government's purported failure to provide notice that it intends to seek admission of the recordings under Rule 404(b).  Def. Br. at 5.  Defendants' argument is misplaced, however, as there is no Rule 404(b) issue.  The recordings are not extrinsic evidence.  Defendants wrongly claim that the recorded conversations "have nothing to do with the acts charged in the Superseding Indictment."  Def. Br. at 1, 5.  Their argument overlooks the fact that Counts 41

through 52 of the indictment allege criminal conduct that is discussed in the recorded conversations.

The government did not give defendants notice under Rule 404(b) of intent to use the recordings because the recordings are not 404(b) evidence. No notice was required – and defendants' entire Rule 404(b) analysis and argument is inapposite – because the recordings are instead direct evidence of criminal conduct alleged in the indictment.

Counts 41 through 52 charge all three defendants with mail fraud. One aspect of the fraud scheme as charged concerns false representations that defendants made to its clients, which appeared on the Guaranteed Returns "extranet." Specifically, Paragraph 6 of Counts 41 through 52 alleges: "Although defendant GUARANTEED RETURNS sometimes disclosed additional fees to clients on the company's 'extranet' – a secure internet site where clients were told they could access their own data – the fees set forth on the extranet did not accurately reflect the higher fees that GUARANTEED RETURNS actually assessed against its healthcare provider clients." Indictment at 22.

In the recording, Ms. Curley states that a fee shown on the "extranet" is "a flat 2% . . . . which is totally bogus. I mean, cause, it's different for every wholesaler." She then says:

CURLEY:     It's less 2 percent disregard that forget that.

GINGRICH:   Taking 2 percent. Ok.

CURLEY:     I mean you can do the math. If you if you looked at the one number compared to the other the difference is 2 percent.

GINGRICH:   Yeah I did that and that's where I was kind of like everything's 2 percent, so, but you explained that we're we're just trying to incorporate that wholesaler admin fee.

CURLEY:        Right but it's not it's not reflective of reality, so stick with the main

                       number.

GINGRICH:     Alright.

CURLEY:        I mean look from the day they launched that thing I've fighting them

                       about that extranet.  So, I feel your pain but you know I'm not I'm not

                       the person to to bring that to.

*See* Ex. 1(transcripts) at pp. 2-4.

               In *United States v. Green,* 617 F.3d 233 (3d Cir. 2010) – a case on which

defendants rely – the Third Circuit explained that evidence is "intrinsic," and thus admissible

without reference to Rule 404(b), if it either (1) "directly proves" a charged offense or (2) proves

"uncharged acts performed contemporaneously with the charged crime . . . [that] facilitates the

commission of the charged crime."  *United States v. Green,* 617 F.3d at 249 (citation omitted).

Here, the recorded conversations directly prove elements of the alleged mail fraud offense –

namely, that the defendants' extranet misrepresented the higher fees that Guaranteed Returns

charged its clients.

               Moreover, the recorded conversations also show contemporaneous bad acts, as the

recordings demonstrate that much of the key fee and reimbursement information given to clients

through the extranet was "bogus," "not representative of the truth," and "not reflective of

reality."  Defendants told their clients that the extranet would allow them to track their credits

accurately.  But since the extranet data was actually "bogus," clients were powerless to police

defendants' behavior.  The knowingly false extranet data thus facilitated defendants' fraudulent

conduct.  Therefore, the recordings are admissible as intrinsic evidence of charged criminal

conduct, and Rule 404(b) does not bar their use at trial.

## II.     THE RECORDINGS ARE NOT UNDULY PREJUDICIAL AND THUS SHOULD NOT BE EXCLUDED UNDER RULE 403.

Defendants next argue that the recordings should be excluded under Rule 403, theorizing that the "marginally relevant" evidence would confuse or prejudice jurors.  Def. Br. at 8.  This argument also fails.

Rule 403 states:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

In evaluating a Rule 403 evidentiary challenge, courts "must balance the genuine need for the challenged evidence against the risk that the information will confuse the jury and delay trial." *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 453 (3d Cir. 1997).  Here, the balancing test weighs in favor of admitting the recorded conversations.

First, the defendants' prejudice argument fails because the recordings are not merely "marginally relevant."  Def. Br. at 8.  The recordings are directly probative, intrinsically relevant evidence of the defendants' guilt as to the mail fraud charges, as explained above.  Thus, defendants' discussion of case law regarding the exclusion of evidence related to "collateral" or "side" issues is irrelevant.  Def. Br. at 9.

Second, the evidence in the recordings would neither confuse jurors nor require a "mini-trial" to explain.  Def. Br. at 8.  Jurors would certainly understand the implication of two Guaranteed Returns personnel acknowledging that the information provided to clients on the extranet was "bogus" and "not representative of the truth" – particularly where the falsity of the extranet information is alleged as a component of the defendants' crimes.  The implication of

6

these concepts as to the defendants' frauds is not obtuse.  Accordingly, the risk of jury confusion does not outweigh the probative value of the recordings.  Moreover, given that the government's case-in-chief will explain the Guaranteed Returns business model, fee structure, client base, and the mechanism through which clients were reimbursed (albeit fraudulently), it is unlikely that the jurors would struggle to understand or interpret the context of the recorded conversations.

In sum, the recordings are probative, intrinsic evidence that tend to demonstrate defendants' guilt as to charged conduct.  Any risk of jury confusion is theoretical and the recordings are not unduly prejudicial.  Thus, the recordings should not be excluded under Rule 403.

## III.    SEVERANCE UNDER RULE 14 IS NOT WARRANTED.

Lastly, the individual defendants argue that should the Court determine that the recordings are admissible as to Guaranteed Returns, the Court should sever their trials from that of the corporate defendant.  The defendants argue that even if inculpatory statements of Ms. Curley, the agent, are admissible against Guaranteed Returns, the principal, severance is required because admission of those same tape-recorded statements of Ms. Curley against them would constitute inadmissible hearsay, admission of which would violate their rights under the Confrontation Clause of the Sixth Amendment as set out in *Crawford v. Washington*, 541 U.S. 36 (2004). Def. Br. at 12.  This argument overlooks the bases for admission of Ms. Curley's statements against them, and misread the requirements of *Crawford*.

The United States offers Ms. Curley's statements in the recorded conversations between Ms. Curley and Gingrich as statements by a co-conspirator in furtherance of the

conspiracy between Guaranteed Returns, Volkes, Fallon and others to defraud customers through the adjustment scheme charged in Counts 41 through 52 of the indictment.[1]

Statements by co-conspirators may be admitted into evidence as exceptions to the general prohibition on hearsay pursuant to Rule 810(d)(2)(E) under three conditions: first, "there must be independent evidence establishing the existence of the conspiracy and connecting the declarant and the defendant to it"; second, "the statements must have been made in furtherance of the conspiracy"; and third, the statements "must have been made during the course of the conspiracy." *United States v. Ammar*, 714 F.2d 238, 245 (3d Cir. 1983) (*citing United States v. Perez*, 658 F. 2d 654, 658 (9th Cir. 1981).

> [T]he existence of a conspiracy can be inferred 'from evidence of related facts and circumstances from which it appears as a reasonable inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding.

*United States v. McGlory*, 968 F.2d 309, 327 (3d Cir. 1992); *see also United States v. Ellis*, 595 F.2d 154, 160 (3d Cir. 1979) (finding sufficient evidence of defendant's participation in conspiracy based, in part, on recorded conversations).

---

[1]    The statements of Ms. Curley, as an agent of defendant Guaranteed Returns, are attributable to the corporate defendant. Counts 41 through 52 charge that all three defendants schemed with each other to commit mail fraud through the adjustment scheme. A corporation can conspire with its officers. *See United States v. St. John*, 625 F. App'x 661, 664-65 (5th Cir. 2015) (not precedential) (affirming judgment of conviction and rejecting defendant's argument that "a corporation cannot conspire with itself."); *United States v. Ames Sintering Co.*, 927 F.2d 232, 236 (6th Cir. 1990) ("This court has held a number of times that a corporation may conspire with its officers and employees"); *United States v. Peters*, 732 F.2d 1004, 1008 & n.7 (1st Cir. 1984) ("The actions of two or more agents of a corporation, conspiring together on behalf of the corporation, may lead to conspiracy convictions of the agents (because the corporate veil does not shield them from criminal liability) and of the corporation (because its agents conspired on its behalf)."). The Third Circuit is in agreement. *See United States v. Basroon*, 38 F. App'x 772, 781 (3d Cir. 2002) (not precedential) (holding that "the intra-corporate conspiracy doctrine . . . clearly does not apply in the criminal context.").

Moreover, in determining whether a statement is exempted from the general prohibition of hearsay evidence based on the existence of a conspiracy, "trial courts must be permitted to evaluate these statements for their evidentiary worth as revealed by the particular circumstances of the case." *Bourjaily v. United States*, 483 U.S. 171, 180 (1987).  A trial court's determination that a conspiracy existed for the purposes of Rule 801(d)(2)(E) need only be supported by "slight" evidence. *United States v. Provenzano*, 620 F.2d 985, 999 (3d Cir. 1980). In complex trials, the Court is permitted to admit statements pursuant to Rule 801(d)(2)(E) subject to later confirmation by the preponderance of independent evidence that the conspiracy existed.  *See United States v. DePeri*, 778 F.2d 963, 981 (3d Cir. 1985); Ammar, 714 F.2d at 245-47 (upholding admission of co-conspirator statements subject to later confirmation).

This Court has now had the benefit of reviewing the transcript of the co-conspirator statements that the United States intends to introduce at trial. The United States urges that, upon inspection, the statements strongly reflect the existence of a conspiracy. Ms. Curley, as Ms. Curley, a high-level insider, explains to Gingrich, an outside salesman, how the extranet misrepresents the company's fees to its customers, as smaller than they actually are. She comments on how management is behind the scheme.  These are key aspects of the adjustment scheme.  This Court can find Ms. Curley to be a member of the conspiracy set out in the Counts 41-52 scheme.  The statements are made during the course of that conspiracy. Further, as both Ms. Curley and Gingrich are both, at the time, working for defendant Guaranteed Returns, the statements are not mere casual conversation, or narratives of past events. They are in furtherance of the scheme, because at the time of the recordings, Ms. Curley was conveying important details about the scheme to Mr. Gingrich, who, as a salesman, had reason to know about the plot, in order to communicate with the company's clients. As the Third Circuit has held,

> Statements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 802(d)(2)(E) are met.  Such statements are more than 'mere narratives' of past events.

*United States v. Weaver*, 507 F.3d 178, 1982 (3d Cir. 2007); *quoting Ammar*, at 252.  The threshold for establishing that a statement was made in furtherance of a conspiracy is not high: " '[t]he in furtherance requirement is usually given a broad interpretation.'"

Similarly, the defendants misread the requirements of *Crawford*.  In *Crawford*, the Supreme Court held that out-of-court statements that are testimonial are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a previous opportunity to cross-examine the witness. 541 U.S. at 68. However, as noted in *Crawford* itself, statements made by co-conspirators during the course of a conspiracy are non-testimonial. *Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial – for example, business records or statements in furtherance of a conspiracy."); Since *Crawford*, the Third Circuit had held repeatedly that "'party admissions and co-conspirator portions' of disputed tape recordings are 'nontestimonial.'" *United States v. Bobb*, 471 F.3d 491, 499 (3d Cir. 2006) (*quoting United States v. Hendricks*, 395 F.3d 173, 183-84 (3d Cir. 2005).  For example, in *Hendricks*, the Third Circuit compared recordings of conversations between various defendants and a confidential informant, to circumstances highlighted by the Supreme Court, which were deemed to be definitely testimonial, and found that "the surreptitiously monitored conversations and statements . . .  [were] not "testimonial" for purposes of *Crawford*." *Id.* at 180-81. *See Bobb*,  471 F.3d 491, 499 (finding that the admission of recorded statements did not violate the Confrontation Clause where the out-of-court statements were recorded and either made by co-conspirators or not offered for the truth of the matter

10

asserted); *see also United States v. Jones*, 372 F.App'x 343, 344 (3d Cir. 2010) (not precedential; finding no violation of the Confrontation Clause where recordings of conversations of co-conspirators were admitted into evidence).  Other circuits agree.  *See United States v. Robinson*, 367 F.3d 278, 292 n. 20 (5th Cir. 2004) ("[T]he statement challenged as hearsay was made during the course of the conspiracy and is non-testimonial in nature."); *United States v. Reyes*, 362 F.2d 536, 541 n. 4 (8th Cir. 2004) ([C]o-conspirator statements are nontestimonial.").

       Here, the transcripts reflect that Ms. Curley did not know that she was being recorded.

       Importantly, none of the cases that the defendants cite in support of their Rule 14 argument relates to a complex economic fraud.  Defendants cite cases regarding the distribution of illegal narcotics, armed postal robbery, and first-degree assault while armed with a deadly weapon, but no crimes where individuals are charged with conspiring with a corporate entity to defraud their customers.  As such, their legal arguments are distinguishable from the case at hand.

       In sum, the individual defendants are not prejudiced by being tried jointly with the corporate defendant because the three are alleged to have agreed to participate in a scheme to defraud; Ms. Curley is both an agent of the corporate defendant and a co-conspirator herself; her statements were in furtherance of the scheme set out in Counts 41 to 52; and were made during the course of the conspiracy.  Thus, the defendants' motion for a severance under Rule 14 should be denied.

## <u>CONCLUSION</u>

For the reasons stated above, the evidence should be admitted, and defendants'

motion to exclude should be denied.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


/s/
Patrick J. Murray
Nancy Rue
Assistant United States Attorneys

12

**<u>CERTIFICATE OF SERVICE</u>**


I certify that the foregoing United States' Opposition was served on all counsel of record by electronic court filing.



/s/_____

Assistant United States Attorney