IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 14-574 (PBT)** |
| **DEVOS LTD. d/b/a GUARANTEED RETURNS** | : | |
| **DEAN VOLKES** | | |
| **DONNA FALLON** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION FOR A LIMITING INSTRUCTION REGARDING PUFFERY**

On February 22, 2017, the defendants, Devos Ltd., d/b/a Guaranteed Returns ("Guaranteed Returns"), Dean Volkes, and Donna Fallon, moved the Court for a limiting instruction that "'puffery' or 'sales talk' does not constitute fraud." Doc. 238 at 1.[1]  This motion (the "motion") identifies statements (collectively, the "statements") that the defendants contend were mere puffery as opposed to intentional falsehoods:

1. Guaranteed Returns claimed to have "an incentive to maximize credits" of its customers.

2. Guaranteed Returns claimed that "we don't make money unless you make money."

Id. at 1, 4.  Both of these statements appear pervasively throughout Guaranteed Returns' promotional materials, presentations, contracts, internal communications, and oral representations.  See, e.g., Gov't trial exs. 2-38, 3-339, 10-1, 10-11, 10-28, 11-8, 14-2.

---

[1] As Defendants note, they have raised this argument at multiple points during the trial, and the Court has overruled the objection each time.  Doc. 238 at 2-3.

For at least three reasons, the motion should be denied.  First, because the statements—factual representations about the nature of Guaranteed Returns' services—were not puffery at all, but specific misrepresentations about the nature of the services offered by Guaranteed Returns.  Second, the statements were part of a larger fraudulent message that defendants intentionally and consistently conveyed to their customers, evidence of which the government is entitled to present.  Finally, and most crucially, whether a statement constitutes puffery is a question of fact to be decided by the jury; the limiting instruction sought by the defense would invade the jury's province.  For these reasons, the motion should be denied.

## I. THE STATEMENTS WERE NOT PUFFERY

A conviction under the mail or wire fraud statutes requires proof beyond a reasonable doubt of three elements: (1) a scheme to defraud; (2) the use of the mails or wires for the purpose of executing the scheme; and (3) participation by the defendant in the scheme with the intent to defraud.  United States v. Pharis, 298 F.3d 228, 234 (3d Cir. 2002); see United States v. Frey, 42 F.3d 795, 797 (3d Cir. 1994).  "The Supreme Court early on gave the scheme to defraud element a broad interpretation, construing it to 'include[] everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future.'"  United States v. Altman, 48 F.3d 96, 101 (2d Cir. 1995) (quoting Durland v. United States, 161 U.S. 306, 313 (1896)).  Likewise, the Third Circuit has broadly defined a scheme to defraud as involving any effort at deceit which aims, in part, to deprive another of money or property.  United States v. Hedaithy, 392 F.3d 580, 590-91 (3d Cir. 2004).  "The scheme need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension."  United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).  Despite these principles, Defendants attempt

to counter the statements, which are strong evidence of their scheme to defraud, by dismissing them as mere puffery. Because the statements far surpassed mere sales talk, the defendants' argument is misplaced and should be rejected.

"Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language . . . [which] is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer." See Castrol, Inc. v. Pennzoil, Inc., 987 F.2d 939, 945 (3d Cir. 1993); see also Speakers of Sport, Inc. v. ProServ, Inc., 178 F.3d 862, 866 (7th Cir. 1999) ("Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously"). For example, assertions that a company is "nationally known" or that its products are "among the finest . . . in the world" are "not cognizable under the federal mail fraud statute." See United States v. Pearlstein, 576 F.2d 531, 540 n.3 (3d Cir. 1978).

By contrast, "the law recognizes that reasonable consumers are likely to be misled by specific assurances concerning the nature of a product or service." See Landau v. Viridian Energy PA LLC, Civ. A. No. 16-2382, 2016 WL 6995038, at *11 (E.D. Pa. Nov. 30, 2016) (citing Castrol, 987 F.2d at 945). Therefore, "false claims that explicitly or implicitly address product attributes of importance to customers and make statements that are measurable by comparative research are not puffery." See Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 464 (D.N.J. 2009). "In short, the federal mail and wire fraud statutes reach a seller's or buyer's deliberate misrepresentation of facts or false promises that are likely to affect the decisions of a party on the other side of the deal." See United States v. Weimert, 819 F.3d 351, 357 (7th Cir. 2016); United States v. Maxwell, 579 F.2d 1282, 1299 (11th Cir. 2009) (fraud requires proof of a "material misrepresentation, or the omission or concealment of a

material fact calculated to deceive another out of money or property.").

Here, the statements at issue were not exaggerated, overstated, or framed in "broad, vague, and commendatory language." See Castrol, 987 F.2d at 945. Nor were they the sort of "empty superlatives on which no reasonable person would rely." See F.T.C. v. Trudeau, 579 F.3d 754, 765 (7th Cir. 2009).

Instead, they were clear factual assertions about the nature of the defendants' services and their motivation to provide them. See Castrol, 987 F.2d at 945 (holding that "[p]uffery is distinguishable from misdescriptions or false representations or specific characteristics of a product."). For example, Exhibit B to the motion describes Guaranteed Returns' "incentive to maximize profits" as follows:

> Since **Guaranteed Returns** collects its fee based on **Actual Credits Received** (**not** on Estimated Return Values), and receives payment from the pharmacy's wholesaler—after the pharmacy receives their Lump-Sum Credit, it forces **Guaranteed Returns** to have an **incentive** to collect as much credit from all the manufactures [sic] processed for the customer.

Doc. 238 ex. B (emphases in original). Exhibit B goes well beyond exaggeration and sales talk. It not only informs the customer that Guaranteed Returns is incentivized to maximize credits, but also explains precisely why the customer should believe that Guaranteed Returns holds that incentive.[2]

---

[2] Indeed, the exhibits attached to the motion undercut the suggestion that the statements were just sales talk. Both sales slicks are filled with verifiable factual assertions upon which Defendants intended customers to rely. For example, Exhibit A describes precisely what is included in the "mail-in service," the "on-site service," and the "full on-site service." It also describes in specific terms the attributes of the program: (1) "over 1,000 crediting manufacturers"; (2) "all inclusive fee deducted from ACTUAL credits received (no hidden charges); (3) "no out of pocket expense, no invoices"; and (4) "lump sum crediting feature." Finally, it describes precisely what a customer would receive for free—customer web interface, disposals, credit reconciliation, shipping, credit monitoring, and credit tracking. Exhibit B, for its part, provides fifteen specific points of comparison between Guaranteed Returns and "other returns companies." Given the specificity provided in the sales slicks, it is simply incorrect for the

These factual assertions—promising, in essence, that Guaranteed Returns' financial incentives were aligned with those of its customers—were the sort of material representations that a reasonable customer might have considered important in making his or her decision to sign up with Guaranteed Returns. See Model Criminal Jury Instructions for the Third Circuit § 6.18.1341-1 (2014); see also Weimert, 819 F.3d at 357 (holding that the mail and wire fraud statutes reach "deliberate misrepresentation of facts or false promises that are likely to affect the decisions on the party on the other side of the deal"). Moreover, those factual assertions about the defendants' incentives were verifiable and, as demonstrated by the government at trial, refutable.[3] See United States v. Martinelli, 454 F.3d 1300, 1317 (11th Cir. 2006) (holding that "factual statements that were verifiably refutable" were not puffery); United States v. Simon, 839 F.2d 1461, 1468 (11th Cir. 1988) (affirming convictions under the mail fraud statute where the misrepresentations at issue were "not opinions [but rather] either true . . . or false").

The defense suggestion to the contrary is misplaced. See Doc. 238 at 6 ("These were not factual statements that were verifiably refutable"). The evidence to date has shown, as the grand jury charged, that Guaranteed Returns was making money on its customers' indates even while the customer was not making money on those indates. See , e.g., 2/22/17, at 20, 32. The evidence has also shown that, despite Guaranteed Returns' claims, the purported "incentive to

---

motion to characterize them as mere puffery. The defendants clearly intended to provide factual representations upon which reasonable customers would rely.

[3] In that sense, they are easily distinguishable from the puffery addressed in the cases cited in the motion. For example, those cases find to be puffery: (1) an assertion that a company was "nationally known" and that its products were "among the finest . . . in the world," United States v. Pearlstein, 576 F.2d 531 (3d Cir. 1978), and (2) an assertion that "dental and financial services to be rendered were of high quality, well above minimal standards of acceptable care in the community." See Walther v. Patel, Civ. A. No. 10-706, 2011 WL 382752, at *7 (E.D. Pa. Feb. 4, 2011). Unlike the statements at issue here, none of the statements considered by the Pearlstein and Walther courts were verifiable or refutable. Instead, they were paradigmatic examples of subjective sales talk.

maximize credits" did not exist.

For all of these reasons, the statements at issue were not puffery, but specific and actionable lies upon which the defendants hoped their customers would rely.

## II. THE STATEMENTS WERE PART OF A CONSISTENT MESSAGE THAT WAS INTENTIONALLY AND FRAUDULENTLY CONVEYED

Indeed, the evidence has shown that the statements in the motion were part of a consistent message that was intentionally and fraudulently conveyed in many forms. The defendants made the false representation that Guaranteed Returns would provide indate aging to customers in many different ways, including sales slicks, sales presentations, oral representations, internal training documents, certain contracts, and request for proposal responses. See, e.g., Gov't trial exs. 2-38, 3-339, 10-1, 10-11, 10-28, 11-8, 14-2. In fact, defendant Volkes even made this false representation in an email that he sent to his brother Darren Volkes in July 2008, which Darren Volkes then forwarded to one of Guaranteed Returns' sales staff who actively working on obtaining and keeping new business. Gov't trial ex. 3-339 (ex. 1).

The jury is entitled to view the evidence of that message in its totality in determining whether a scheme to defraud existed. See United States v. Guadagna, 183 F.3d 122, 131 (2d Cir. 1999). In Guadagna, for example, the defendant argued, and the District Court agreed, that his statements to the victim that the victim had "hit it big" in the "jackpot" were "mere puffery." Id. The Second Circuit reversed the judgment of acquittal, noting that after hearing a "substantial body of evidence, the jury was entitled to conclude that when [the defendant made his allegedly fraudulent statement that the victim had "hit it big"], he knew exactly what he was doing— misleading someone by suggesting that she had won a car and that she was somehow required to purchase overpriced air filters to claim her prize." Id.

As in Guadagna, whether the defendants engaged in fraud or puffery is a jury question, to

6

be decided in the context of all the defendants' statements.  The government is entitled to adduce evidence of all of the statements made by the defendants, and the jury is entitled to consider the totality of those statements, whether lies, false promises, half-truths, or concealment of material facts, to determine whether that evidence amounts to a fraudulent scheme or, instead, was mere seller's talk.  See United States v. Armantrout, 411 F.2d 60, 64 (2d Cir. 1969) ("Naturally [defendants] will always disclaim fraudulent intent.  Therefore, it must be the exclusive function of the jury to form its own conclusion after examining and appraising the evidence.").  The motion asks this Court to take the statements out of their proper context, look at them in isolation, and eliminate them from the jury's consideration.  This would inappropriately invade the jury's province.  The motion should be denied.

### III.     **DEFENDANTS' PROPOSED INSTRUCTION IS FLAWED**

Finally, the proposed limiting instruction offered by the defense is flawed for another reason: it inappropriately suggests that the jury should conclude that the statements are puffery.  Courts have recognized that "whether a defendant's statements amount to fraud or puffery is to be decided by a jury . . . ."  See United States v. Weaver, Crim. A. No. 13-120, 2014 WL 173489, at *2 (E.D.N.Y. Jan. 10, 2014); see also United States v. Blankenship, Crim. A. No. 5:14-00244, 2015 WL 1565757, at *5 (S.D.W.V. Apr. 8, 2015) ("The Defendant's assertion that these statements are only business puffery is likewise more appropriate for the jury to decide as it intertwines legal and factual determinations.").

Nevertheless, the first paragraph of the proposed limiting instruction describes the statements at issue before proceeding to explain that "statements that are mere puffery are not fraudulent; and the recipient of a representation is not justified in relying on the representation if it is one of a mere commercial 'puffing' rather than a fraudulent misrepresentation of fact."  This

7

organization wrongly suggests to the jury that the statements are puffery. For this reason as well, the Court should decline to give the proposed limiting instruction.

## IV. CONCLUSION

For the reasons stated above, the government respectfully submits that the defendants' motion for a limiting instruction that sales statements that constitute mere puffery do not constitute fraud be denied.

                                                           Respectfully submitted,

                                                           LOUIS D. LAPPEN
                                                           Acting United States Attorney


                                                           /s/ Nancy Rue
                                                          NANCY RUE
                                                          PATRICK MURRAY
                                                          *Assistant United States Attorneys*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Opposition to Defendants' Motion for a Limiting Instruction Regarding Puffery Motion in Limine, and accompanying documents, have been sent by the Court's ECF system to all counsel of record.

/s/ Nancy Rue_____
Assistant U.S. Attorney